## CORONA'S AUTO PARTS, INC. *v.* ZONING BOARD OF APPEALS OF THE CITY OF HARTFORD

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued April 3—decided May 6, 1969

*Edward J. Daly, Jr.,* with whom, on the brief, was *George A. Silvester,* for the appellant (plaintiff).

*Richard M. Cosgrove,* deputy corporation counsel, with whom, on the brief, was *John M. Fitzgerald,* corporation counsel, for the appellee (defendant).

ALCORN, J.   The plaintiff has appealed from a judgment of the Court of Common Pleas dismissing its appeal from a decision of the defendant zoning board of appeals.

The plaintiff owns slightly over eighteen acres of land which is in an industrial zone in what is popularly called the south meadows area of Hartford. The operation of an automobile junk yard is permitted in an industrial zone under the Hartford zoning regulations, and about fifteen acres of the land are being used for such purpose at the present time. Pursuant to § 21-16 of the General Statutes (Rev. 1958), the plaintiff applied to the defendant zoning board of appeals for approval of the remaining 3.137 acres as a suitable location for an automobile junk yard.  A certificate from the defendant board that the land was not located within an established district restricted against such use, and that the location was suitable for such use, consideration being given to factors specified in § 21-17 of the General Statutes, was required as a prerequisite to the

issuance of a license by the commissioner of motor vehicles before the plaintiff could use the property for an automobile junk yard. The material part of the statute is quoted in the footnote.[1] There is no claim, and there is nothing in the record to indicate, that either the zoning or the planning authorities had adopted any rules, orders or regulations imposing restrictions on the use of property in the area for motor vehicle junk yards as might have been done pursuant to § 21-23.

In considering the application, the defendant board was required to take into account "the nature and development of surrounding property; the proximity of churches, schools, hospitals, public buildings or other places of public gathering; the sufficiency in number of other such yards or businesses in the vicinity; the health, safety and general welfare of the public and the suitability of the applicant to establish, maintain or operate such yard or business and to receive a license therefor." General Statutes (Rev. 1958) § 21-17. In passing on the application, the board was acting as an administrative agency of the state rather than in a zoning capacity. *Petrillo* v. *Board of Zoning Appeals,* 147 Conn. 469, 472, 162 A.2d 508.

A hearing was held on the plaintiff's application at which no one appeared in opposition. At the

---

[1] "Sec. 21-16 [Rev. 1958]. CERTIFICATE OF APPROVAL OF LOCATION, LICENSE REQUIRED. No person, firm or corporation shall establish, operate or maintain a motor vehicle junk yard or motor vehicle junk business unless a certificate of approval of the location to be used therefor has been procured from . . . the zoning board of appeals, certifying that such location is not within an established district restricted against such uses and that the location is suitable for the proposed use, consideration being given to the factors specified in section 21-17, nor unless a license to establish or maintain such a yard or such a business has been obtained from the commissioner of motor vehicles as provided in section 21-18."

start of the hearing, however, a paper was read into the record by the chairman of the defendant board which he described as "the remarks of the City Plan." The paper was later introduced into evidence. It did not contain a recital of any formal action, vote or resolution by the commission on the city plan. Instead, it purported to be a field investigation of the plaintiff's property, reciting in substance that the property is bounded on the north by a large industrial lot, which is partially vacant; on the south by a welding shop; on the east by industrial property; and on the west by vacant land. The neighborhood is stated to be developing into heavy commercial and industrial uses. Two photographs and a line drawing of the area are included. The plaintiff's property is stated to be fully occupied by junk automobiles. It is further stated that the city has plans for "phasing out" the storage of junk automobiles in the south meadows area and for encouraging industrial development which would require the removal of the plaintiff's junk yard and that approval of the present application would legalize an existing unauthorized use of the property in conflict with those plans. The paper is authenticated only by the signature of two individuals who signed it as "associate director" and "director" without any indication of the authority which they purport to represent in the stated capacities. The parties, however, have seen fit to treat the paper as a report from the commission on the city plan. Consequently, we shall do likewise.

Following the hearing, the defendant board unanimously denied the plaintiff's application. The only reason given was the following: "The Board in making their decision noted that this property is located in a section of the City now being developed

into a modern industrial park." There is nothing in the record before us to support the reason given for the board's decision unless it can be found in the "remarks of the City Plan." Nor do we find any other basis in the record for a denial of the plaintiff's application, having in mind the controlling considerations specified in General Statutes (Rev. 1958) § 21-17. There is no indication in the record that any question was raised as to the plaintiff's suitability to operate a motor vehicle junk yard, and it does not appear that any of the area involved abuts a residential zone.

The defendant zoning board of appeals exists under authority of the city charter. Hartford Charter, c. 19 § 9 (1964); 25 Spec. Laws No. 30, p. 86 § 9; 28 Spec. Laws No. 641, p. 843 § 6. The duty of the commission on the city plan as defined in § 2 of chapter 19 of the charter is "to prepare and recommend from time to time plans for the development of the city or any portion thereof which may include: (a) The general location and character of streets, bridges, boulevards, esplanades, squares, parks, playgrounds, playfields, aviation fields, parking spaces, public buildings and the facilities and terminals of public utilities whether publicly or privately operated; and (b) Proposed regulations as to the use and occupancy of land and buildings. The commission shall make or cause to be made a map or maps of the city or any portion thereof illustrating such plans of development." No such plan of development appears in the record before us.

It is the proper function of a municipal planning board, in an advisory capacity, to adopt plans for the coordinated development of the municipality in anticipation of changed conditions. *Rosenberg* v. *Planning Board,* 155 Conn. 636, 639, 236 A.2d 895;

*Levinsky* v. *Zoning Commission*, 144 Conn. 117, 123, 127 A.2d 822. And, when such plans are developed, cooperation is desirable between the zoning authorities and the planning authority. *Ferndale Dairy, Inc.* v. *Zoning Commission*, 148 Conn. 172, 176, 169 A.2d 268.

We find, in the record before us, no reason for the action taken by the defendant zoning board of appeals other than that stated in their formal denial of the plaintiff's application, namely that "this property is located in a section of the city now being developed into a modern industrial park." There can be no doubt that "[r]egulation, reasonably applied, which will promote community development finds support in the police power." *State* v. *Kievman*, 116 Conn. 458, 463, 165 A. 601. A search of the record fails to disclose, however, that the area which includes this property is "now being developed into a modern industrial park." Even if we assume, as the parties have done, that the "remarks of the City Plan", as the chairman styled the paper which he read at the hearing before the defendant board, adequately indicated some formal action by the commission on the city plan, it nevertheless did not indicate the action attributed to it by the defendant board. On the contrary the so-called findings and recommendations, in material part, assert that approval of the plaintiff's application would, in the opinion of the signatories to the paper, "be in direct conflict with the City's future plans for developing the South Meadows, and would make the task of phasing out existing junkyards more difficult and expensive." In short, it seems clearly apparent that the action of the defendant board rested on the premise that the area is now being developed into a modern industrial park, whereas, in fact, the "re-

marks of the City Plan", on which reliance for that premise was based, indicate only that approval of the plaintiff's application would be in conflict with some undefined future plans for the area which would make it more expensive and difficult to eliminate existing junk yards.

Beyond that, however, is the fact that General Statutes (Rev. 1958) § 21-17 placed upon the defendant board the responsibility of certifying whether, in its independent judgment, the use of this land for an automobile junk yard was permitted under the zoning regulations applicable to it and whether, if that were so, the location was suitable for such use, taking into account the specified considerations. Clearly enough the zoning requirements were met. Furthermore, the board has not found the location to be unsuitable for any of the reasons specified in § 21-17. Nor do we find in the record evidence which would support such a finding.

It follows that the evidence before the board failed to support the decision which it reached.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal and direct the defendant to issue the requested certificate of approval to the plaintiff.

In this opinion the other judges concurred.