## 54920. McKNIGHT v. MITCHELL et al.

WEBB, Judge.

This appeal arises from the disposition of the Coweta Superior Court of an application for a zoning variance after a de novo hearing held pursuant to Code Ann. § 69-1211.1.[1] The facts established are as follows.

The appellees Willis Mitchell and his sons Aubrey and Ronnie Mitchell have operated together an automobile wrecking and junkyard business for over fifteen years. At the time the zoning law was enacted in Coweta County the Mitchells were operating one junkyard within the city limits of Senoia and another around Willis' home on Bailey Road. There was road frontage of some 500 to 600 feet on Bailey Road where the house was located and junk automobiles were collected there in full view of travelers on that thoroughfare. For many years there had been objections and complaints from neighbors and citizens of Senoia and the surrounding area.

Ronnie Mitchell owned a 75-acre tract adjacent to Willis Mitchell's Bailey Road property. After passage of the zoning ordinance, in response to civic pressure to remove the operation, Willis and Aubrey Mitchell leased approximately 18 acres in the center of Ronnie's 75-acre tract, planning to move the junk automobile business thereon. The 75-acre tract contained dense woodland which would act as a buffer around the 18 acres located inside it.

In April of 1976 Ronnie Mitchell applied for a permit to operate an automobile wrecking and junkyard business, which was denied by the building inspector of Coweta County because the 75-acre tract was zoned R-1 (one family residential). His application to the board of zoning appeals for a variance was also denied. In June,

---

[1] Previously we remanded this case (142 Ga. App. 344 (235 SE2d 763) (1977)) with direction that the superior court vacate the judgment, cause appropriate findings of fact and conclusions of law to be made, and enter a new judgment thereon.

Willis and Aubrey Mitchell applied for a building permit to operate the business on the 18-acre tract leased from Ronnie. This permit was denied and an application for a use variance was filed within the board of zoning appeals. In July the variance was granted conditioned on the Mitchells' agreement to permanently remove the salvage operations then located within public view within the City of Senoia and on Bailey Road; to strictly adhere to the 18-acre boundaries; and to maintain and improve the dense buffer zone.

Several adjoining landowners and other citizens appeared at the hearing on the variance. While most were in favor of the proposal, the appellant Paul R. McKnight opposed the application and appealed the decision to the superior court, alleging that he was an aggrieved person who had suffered substantial damage by the granting of the variance. McKnight's property abuts the 75-acre tract owned by Ronnie Mitchell, but is not immediately adjacent to the 18 acres of land on which the variance was granted.

After a de novo hearing the superior court entered a judgment in favor of the Mitchells, finding pursuant to the zoning resolution and Code Ann. § 69-1211 (2) that there were extraordinary and exceptional conditions pertaining to the property in question because of its size, shape and topography; that application of the zoning resolution to the 18-acre tract would create an unnecessary hardship; that the conditions were peculiar to the property involved; and that relief if granted would not cause a substantial deterrent to the public good or impair the purpose and intent of the zoning resolution. McKnight appeals.

1. McKnight's enumeration that the superior court lacked authority to grant a use variance cannot be considered since this question was not raised below either by motion or the evidence. *Mayes v. Hodges,* 142 Ga. App. 538 (1a) (236 SE2d 494) (1977); *Jenkins v. Bd. of Zoning Appeals,* 122 Ga. App. 412, 413 (2) (177 SE2d 204) (1970).

2. The Zoning Resolution of Coweta County empowers the Board of Zoning Appeals in individual cases of "practical difficulty or unnecessary hardship" to grant variances upon a finding that all of the conditions

found to exist in the instant case do in fact exist. McKnight contends that they were not present here, and that the conclusions of law of the superior court were a "mere parroting" of the language of the zoning resolution because the record is devoid of evidence to support them. We do not agree.

The evidence showed that the topography, size and shape of the property was unique in that it is an 18-acre rectangle in the interior of a 75-acre tract of woodland so surrounded that it has at least 600 feet of woodland on all sides. Clearly such a site is preferable to the existing junkyards located within the city limits of Senoia and in full view of the public in front of Willis Mitchell's home on Bailey Road. To deprive a person of a legitimate business would certainly create an unnecessary hardship, and the legitimate value of automobile junkyards to the public good has been generally acknowledged by the courts. See, e.g., Town of Vestal v. Bennett, 104 NYS2d 830 (NY 1950); New Orleans v. Southern Auto Wreckers, 192 S 523 (La. 1939); Levine v. Board of Adjustment, 7 A2d 222 (Conn. 1939).

Thus, where a zoning ordinance contains appropriate standards, the refusal of a permit to operate a junkyard may not properly rest solely on the ground that the yard will depreciate surrounding property. State v. Kievman, 165 A 601, 88 ALR 962 (Conn. 1933). Compare *Newton v. Fidelco Growth Investors,* 142 Ga. App. 300 (1) (235 SE2d 622) (1977) and cits. Nor may a permit be withheld merely because there are a few residences in the vicinity of the proposed site, Blumlo v. Hampton Township Board, 15 NW2d 705 (Mich. 1944); or on the conclusion of a board of zoning appeals that the yard might conflict with some future plans for the development of the area (Corona's Auto Parts v. Zoning Board of Appeals, 259 A2d 618 (Conn. 1969)); and denial of a permit based solely upon the unesthetic appearance of a junkyard has also been disapproved (Rogalski v. Township of Upper Chichester, 178 A2d 712 (Pa. 1962)). "A denial of permit without proof that the use will be noxious, or that it will offend some standard imposed by the ordinance, will not be sustained . . . Refusal to approve a permit will not be sustained where the applicant lost part of his present site through

condemnation, where there are no alternate sites, and where another permit has been issued near the proposed one." 2 Anderson, American Law of Zoning 2d 680, 682, § 15.50. See generally Anderson, supra, §§ 15.44 through 15.53 and cits.; Annot. 50 ALR3d 840, § 2.

The topography of the land upon which the variance was granted here combined with the other factors considered above meets the exceptions set forth in the zoning statute and county resolution.

3. We find no reversible error in the conclusion of the superior court that McKnight was not damaged in any way not common to other property owners similarly situated, and was therefore not an "aggrieved person" as contemplated by Code Ann. § 69-1211.1, providing for appeals from a decision of a board of zoning appeals.

McKnight's property did not abut or touch the 18-acre tract on which the variance was granted. He testified, however, that the junkyard site would interfere with the purpose he intended for his property because in order to subdivide it "you would have to run a road parallel to the south line of my property in order to get back on the west side of the land." The west side of McKnight's property is further from the 75-acre tract than any other part of his property, and at the closest point there would be the 600-foot woodland buffer between the junkyard site and his property. Other landowners abutting the 75-acre tract present at the zoning board hearing offered no objections and saw no effect that the variance would have on their property.

McKnight also offered evidence that a small branch flowing from the 75-acre tract onto his property would be polluted by the junkyard operation. The stream does not traverse the 18-acre junkyard site and the finding of the superior court that while some wastes in the form of lead, oil and other materials are created by this type of operation, the evidence failed to show that any of it would wash or drain onto McKnight's property, was authorized.

In any event, McKnight was accorded a full de novo evidentiary hearing on the merits of his appeal and was in no way harmed by the subsequent ruling that he was not an aggrieved person.

4. McKnight's argument that the superior court

judgment is inconsistent and uncertain, does not indicate with reasonable clearness the decision which was rendered, and does not conform to the evidence and pleadings, is without merit. This contention is based upon an error in the legal description of the rezoned property in which the judgment recites that a point is located on the intersection of the north right of way line of Bailey Road with the *west* line of Land Lot 246, when it should have been the *east* line of Land Lot 246. It is apparent upon examination of the map that the north line right of way does not cross the west line of Land Lot 246 at any point; it only crosses the east line. It is obvious that the court intended to describe the property in question (Cf., *Powers v. City of Cordele,* 143 Ga. App. 363, 365 (1) (1977)), and it is directed to correct this trivial error in order to clarify the description in the judgment.

*Judgment affirmed with direction. Deen, P. J., and Birdsong, J., concur.*

SUBMITTED NOVEMBER 3, 1977 — DECIDED NOVEMBER 22, 1977.

*Mathews, Knight, Jones & MacNabb, Joseph P. MacNabb,* for appellant.

*Elliott & Turner, Tyron Elliott,* for appellees.