**YALE AUTO PARTS, INC., Et al.**

v.

**Frederick JOHNSON, Et al.**

**Civ. No. N–81–159.**

United States District Court,
D. Connecticut.

Sept. 4, 1984.

---

Stephen R. Mills, Epstein, Becker, Borsody & Green, New York City, Nancy L. Sobocinski, Cantor, Floman & Russell, Orange, Conn., for plaintiffs.

David Gibson, West Haven, Conn., for defendant Frederick Johnson.

Louis S. Votto, West Haven, Conn., for defendant Robert Johnson.

Ann Coonley, Asst. Corp. Counsel, West Haven, Conn., for defendants Leon S. Soroker, Charles Vingiano, Ann G. Shannon, Edward Formichella and City of West Haven, Conn.

## RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

DORSEY, District Judge.

Plaintiffs Paul Isacoff (Isacoff), owner of real property in West Haven, and Yale Auto Parts, Inc. (Yale), lessee thereof, seek damages pursuant to 42 U.S.C. § 1983 based on the 1978 and 1980 denials of Yale's application for a certificate of location approval—a prerequisite to a state Department of Motor Vehicles (DMV) license to operate an automobile junkyard business—by the West Haven Zoning Board of Appeals (ZBA). Defendants herein are the then-members of the ZBA along with the Mayor of West Haven and the Chairman of the West Haven Democratic Town Committee. Defendants' motion under Fed.R. Civ.P. 12(b) seeks dismissal of the federal claims for failure to state a claim upon which relief can be granted and the state claims for lack of subject matter jurisdiction. As the pleadings are closed, the mo-

tion is more properly treated as a motion for judgment on the pleadings, Fed.R. Civ.P. 12(c). For the reasons below the motion will be granted without distinguishing between the rights of the property owner and lessee.

*Facts*

The undisputed facts can be summarized as follows. Isacoff owned and operated Yale, a used car and automobile junkyard business in New Haven. In 1974, after condemnation of the New Haven site, Isacoff purchased a tract at 9 Spring Street, West Haven, intending to relocate his business. Construction and financing were arranged, conditional upon receipt of the DMV license.

Before DMV could issue such a license, plaintiffs had to clear two local administrative hurdles. On January 5, 1978, the West Haven Planning and Zoning Commission (PZC) cleared the first obstacle, granting Isacoff's application for a change of zoning, thereby permitting heavy industrial use, and issued a special permit for the operation of an automobile parts salvaging business.

Thereafter, Isacoff applied to the ZBA for a certification of location approval on Yale's behalf. After a public hearing on January 17, 1978, the ZBA denied the application.

Yale appealed the ZBA denial to the Connecticut Superior Court. Finding that the ZBA had acted capriciously, unreasonably and illegally with predisposition and predetermination, thereby denying the applicant's right to a fair hearing, the court sustained the appeal. The essence of the impropriety was the notice taken by the four Democratic members of the five-member ZBA of the reported position of defendant Fred Johnson—then West Haven Democratic Town Chairman and brother of the mayor, Robert Johnson—that the Yale application should be "killed." The matter was remanded to the ZBA "to act upon said application solely according to law." The court did not, as the complaint had prayed, direct the ZBA to issue the certificate. Nor did the Superior Court, in denying a post-judgment request to modify, disqualify the four board members in question from further participation.

Plaintiffs brought a § 1983 action to this court, which was dismissed as premature absent the further consideration of the application by the ZBA as ordered by the Superior Court. Yale then requested a further hearing, which was held on October 15, 1980, and continued on October 29 and November 19, 1980. On November 19, 1980, after letters detailing the opposition of the mayor, planning and zoning commission and the planning director were read into the record over objection, the ZBA voted unanimously to deny the application.

Thereafter, apparently in lieu of seeking state court review of the denial, as authorized by Connecticut law, plaintiffs secured the legislature's passage of a private act, P.A. 81–347, whereby Yale could obtain the certificate of location approval from the PZC rather than the ZBA. Upon application, the PZC issued the certificate on November 10, 1981. DMV then issued the license on March 23, 1982.

Defendants claim that the second amended complaint, seeking money damages arising from the ZBA's denial of Yale's 1978 and 1980 applications, states neither due process nor equal protection claims under § 1983 or a conspiracy claim under § 1985(3) and thus assert that these claims and the pendent claims under the Connecticut constitution must be dismissed.

*Discussion*

I. *Due Process*

A.

■ In claiming a deprivation of property without due process of law, plaintiffs must first establish a constitutionally protectible property interest in the certificate of location approval, and then establish the deprivation of that interest without due process of law. As the Supreme Court has stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must

have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

"[T]he range of interests protected by procedural due process is not infinite." *Id.* at 570, 92 S.Ct. at 2705. Such interests "are created and their dimensions are defined by existing rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709.

■ Where a local zoning, planning or other agency enjoys discretion in determining whether applicable law or regulations have been satisfied, the applicant has been deemed to have but a unilateral expectation which does not merit constitutional protection and is thus not cognizable under § 1983. *See, e.g., Deutsch v. Yudkin,* Civil No. N–79–14 (D.Conn. January 8, 1981) (no protectible property interest in an application for subdivision approval as act not purely ministerial); *Adams v. Town of Bethlehem,* Civil No. H–80–544 (D.Conn. Feb. 22, 1982) (oral ruling), *aff'd without opinion,* 697 F.2d 287 (2d Cir.1982) (prior state court finding of abuse of discretion in the denial of subdivision application compels conclusion that act was other than purely ministerial and thus interest not constitutionally protected); *Francini v. Town of Farmington,* 557 F.Supp. 151 (D.Conn.1982) (to same effect).

The due process claim is thus dependent on whether this is a variant of the disgruntled developer case, *id.* at 153, which does not implicate the constitution, or whether the ZBA's decision-making authority was purely ministerial, thereby cloaking plaintiffs' interest with constitutional protection.

B.

■ A junkyard certificate of location approval certifies that the location is suit-

able for the proposed use, consideration being given to the factors specified in Conn.Gen.Stat. § 14–67k.[1] Section 14–67k, provides in pertinent part:

Such local authority, in considering such application, shall take into account the nature and development of surrounding property; the proximity of churches, number of other yards or businesses in the vicinity; whether or not the location is within a restricted district …; the health, safety and general welfare of the public and the suitability of the applicant to establish, maintain or operate such yard or business and to receive a license therefor.

Plaintiffs argue that this is quite distinct from the garden-variety disgruntled developers situation by reason of the special statutory structure under which the ZBA acts with regard to certificate of location approvals. Plaintiffs argue a distinction without a difference. Their position is belied by the relevant statutory language, case law, the prior proceedings in this action, and the fact that the statutory scheme permits the ZBA to exercise its judgment within a range utilizing a number of criteria which strongly, if not conclusively, demonstrate that the ZBA's decision is not ministerial.

The Connecticut Supreme Court has repeatedly noted that:

The zoning board of appeals, in acting upon an application for a certificate of approval of a location for either a motor vehicle junkyard or a used car business, acts in a special capacity under the statutes regulating the locations of and the licenses for these particular businesses and not under the local zoning regulations or the zoning statutes.

*Petrillo v. Board of Zoning Appeals,* 147 Conn. 469, 472, 162 A.2d 508 (1960) (citations omitted). In passing on such an application, the board acts as an administrative agency of the state rather than in a zoning capacity. *Corona's Auto Parts,*

---

1. During the period in question, the provisions of § 14–67k were set forth in § 21–17, since transferred to § 14–67k.

*Inc. v. Zoning Board of Appeals,* 158 Conn. 244, 246, 259 A.2d 618 (1969).

Yet, for due process purposes, plaintiffs suggest no sound reason here nor could there be one for a departure from the standard *Roth* due process analysis in regard to the ZBA's consideration of a certificate of location approval. Consequently, Conn.Gen.Stat. § 14–67k must be subjected to the usual discretionary/ministerial analysis.

The language of § 14–67k enumerates nonquanitified, and indeed nonquantifiable, criteria, perhaps nonexhaustive, to be considered. Surely more than a modicum of discretion is involved in exercising judgment within such statutory criteria, *see Deutsch,* as the "nature and development of surrounding property" and "the health, safety and general welfare of the public." Conn.Gen.Stat. § 14–67k.

*Corona's* is not to the contrary and indeed comports with the statutory analysis suggested above. There, the Connecticut Supreme Court sustained the appeal of a denial of a certificate of location approval application, and remanded with directions that the board issue the certificate. Determinative of the result was the board's failure to enumerate a single statutorily permissible reason for its action. Significantly, the court noted that the board had failed in the discharge of its

> responsibility of certifying whether, in its *independent judgment,* the use of this land for an automobile junkyard was permitted under the zoning regulations applicable to it and whether, if that were so, the location was suitable for such use, *taking into account* the specified considerations.

158 Conn. at 250, 259 A.2d 618 (emphasis added).

Here, on the contrary, the board twice enumerated permissible reasons for its actions in denying the second application. Thus, even in the absence of a state court record such as created in plaintiffs' suc-

cessful appeal of their 1978 denial, the ZBA's actions cannot be deemed other than discretionary.[2] *See also Delmar v. Planning & Zoning Board,* 19 Conn.Sup. 21, 109 A.2d 604 (1955) (discussing Conn.Gen. Stat. § 4655, a predecessor to § 14–67k, in terms of the wide and liberal discretion ordinarily accorded zoning authorities generally).

The proceedings in state court further buttress this view. Had the state court referee been of the opinion that only one conclusion could reasonably have been reached by the ZBA, it is doubtful, in denying plaintiffs' motion to modify the judgment, that he would have relied on *Bogue v. Zoning Board of Appeals,* 165 Conn. 749, 753–54, 345 A.2d 9 (1974), going no further than to sustain the appeal and to remand for further proceedings, leaving to the ZBA a proper decision on the matter in accordance with, and thus within, the statutory criteria.

For all of the above reasons, and under *Deutsch, Adams* and *Francini,* these plaintiffs had no more than an expectation as an applicant for a certificate of location approval under § 14–67k and not an entitlement that would be protected by the constitution. Accordingly, as plaintiffs have stated no right which requires the protection of due process, defendants' motion for judgment on the pleadings in regard to the allegation of a denial of due process in the second amended complaint must be granted.

## II. *Equal Protection*

Plaintiffs' equal protection claim is subject to the same flaws that proved fatal to that asserted in *Francini,* wherein the court noted both that:

> A claim of denial of equal protection may not be merely another way of stating what has already been put forward as a claim of denial of due process ... [and that while Francini's complaint and memorandum contained] numerous allega-

---

**2.** Neither the correctness of the ZBA decision nor the manner in which it proceeded, both of which would have been reviewed on appeal to

the superior court as was done once, are presented here.

tions that the Commission 'discriminated' in its denial of Francini's subdivision application, nowhere [do they] suggest that Francini was treated any differently than any other applicant for a subdivision.

557 F.Supp. at 157–58.

Plaintiffs do not allege that defendant board members would have acted or did in fact act differently in relation to any other similarly situated applicant or that the "word" from high party officials to "kill" the application was an invidious discrimination of the sort prohibited by the equal protection clause as opposed to a mere exposition of the opinions of those officials. *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2690, 65 L.Ed.2d 784 (1980). As at best essentially repetitive of the due process claim, plaintiffs' equal protection claim must be dismissed.

III. *Conspiracy*

Plaintiffs' final federal claim, asserted under 42 U.S.C. § 1985(3), alleges a conspiracy to deprive plaintiffs of constitutional rights on the basis of political affiliation.

■ To state a cause of action under § 1985(3), a complaint must allege a conspiracy by two or more persons to deny equal protection of the law. The complaint must also allege that the conspiracy is motivated by invidious, racial or otherwise class-based discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiffs' memorandum appears to bottom their claim under this section on a purported discriminatory animus based on political affiliation. "These conspiracies were motivated by the differing political affiliations between plaintiffs and the conspirators, and plaintiffs are entitled to attempt to uncover further evidence to prove this proposition during discovery." Memorandum in Opposition at 26. It is inappropriate that the court be asked to await such discovery since plaintiffs have had three years since the filing of this suit to do so, either without making such effort or, if made, to no avail.

Disregarding the absurdity of premising a claim of discrimination on the political affiliation of the corporate plaintiff, plaintiffs' conclusory conspiracy claim is far too flimsy to be found to have constitutional merit.

Without necessarily adhering to plaintiffs' view that the majority in *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), tilted toward finding that § 1985(3) could encompass politically-based discrimination, the complaint fails to satisfy the earlier and clear ruling of *Keating v. Carey,* 706 F.2d 377, 386–88 (2d Cir.1983). There, our Court of Appeals held that the allegations of a New York civil servant, active in Republican party affairs, (a) that he was informed that he would be removed from his tenured post once the Democratic administration of Governor Carey took office, (b) that he was so removed, and (c) that he was subsequently and wrongly misled to believe that he enjoyed no tenure rights in the first place, satisfied the *Griffin* requirement under § 1985(3) of a proscribed discriminatory animus based on his affiliation as a Republican. The court held:

that Republicans are a protected class for the purpose of § 1985(3) (as would be Democrats or members of any political party *in the circumstances herein alleged*), and that the plaintiff has *properly pleaded* that the defendants discriminated against him on the basis of his Republican affiliations.

706 F.2d at 379 (emphasis added).

■ Here, despite the inaccurate characterization of the complaint in the memorandum excerpt above, none of the three complaints herein to date alleges or even intimates any political affiliation on the part of Isacoff, let alone that his political affiliation (albeit unalleged) motivated the undefined efforts to "kill" Yale's application. It would strain credulity and do violence both to *Keating* and to the special pleading requirements under the civil rights laws, *see, e.g., Reilly v. Leonard,* 459 F.Supp. 291, 300–01 (D.Conn.1978); *Valley v. Maule,* 297 F.Supp. 958, 960–61 (D.Conn.1968), to

allow plaintiffs' conclusory and inaccurate characterizations of the pleadings in their memorandum to bootstrap the complaint before the court into a viable § 1985(3) conspiracy claim notwithstanding its clear deficiencies.

The § 1985(3) claim cannot withstand defendants' motion.

IV.

Having thus disposed of the federal claims herein, plaintiffs' pendent state law claims are not within the subject matter jurisdiction of this court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Smith v. Walsh*, 519 F.Supp. 853, 860 (D.Conn.1981).

Judgment on the pleadings shall, therefore, enter on all claims on behalf of all defendants.

SO ORDERED.