758 F.2d 54
 YALE AUTO PARTS, INC. and Paul Isacoff, Plaintiffs-Appellants,
v.
Frederick G. JOHNSON, Leon S. Soroker, Charles Vingiano, Ann
G. Shannon, Edward Formichella, Robert J. Johnson,
and the City of West Haven, Defendants-Appellees.
 No. 772, Docket 84-7840.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 5, 1985.
Decided March 20, 1985.
 
 Dennis A. Lalli, New York City (Stephen R. Mills, Marion S. Kaplan, Epstein Becker Borsody & Green, P.C., New York City, of counsel), for plaintiffs-appellants.
 Ann P. Coonley, Asst. Corp. Counsel, City of West Haven, West Haven, Conn. (David A. Gibson, Heffernan, Leary & Gibson, Louis Smith Votto, Donahue & Votto, West Haven, Conn., of counsel), for defendants-appellees.
 Before LUMBARD, MANSFIELD and PIERCE, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Plaintiffs Paul Isacoff (Isacoff) and Yale Auto Parts, Inc. (Yale) appeal from a judgment of the District of Connecticut, Peter C. Dorsey, J., granting the motion of defendants (City of West Haven, Robert J. Johnson, Mayor of the City, four members of its Zoning Board of Appeals (ZBA), and Frederick Johnson, the City's Assistant Director of Public Works and Chairman of the West Haven Town Committee of the Democratic Party) to dismiss their complaint, which seeks damages pursuant to 42 U.S.C. Secs. 1983 and 1985(3).[1] 593 F.Supp. 329. The complaint charges that the defendants conspired arbitrarily to deny them a certificate of location approval sought from the ZBA for the conduct of a motor vehicle junkyard business at a certain location in the city, thereby violating their due process and equal protection rights under the U.S. Constitution. Pendent claims that defendants' conduct violated plaintiffs' rights under Connecticut's Constitution were also dismissed. We affirm.
 
 
 2
 Prior to the events in question Isacoff owned and operated Yale, a used car and automobile junkyard business in New Haven, which he was forced to remove when the site was condemned for a roadway. In 1974 he sought to relocate the business to a 28-acre tract in West Haven owned by him. In order to do so he was required to obtain a license from the Department of Motor Vehicles (DMV), which would be issued upon his obtaining (1) approval by the West Haven Planning and Zoning Commission (PZC) of a zoning change and a special permit, and (2) approval by the West Haven ZBA of a certificate of location approval required by C.G.S.A. Sec. 14-67i (formerly Sec. 21-16).[2]
 
 
 3
 On January 7, 1978, the PZC issued its approval. However, after a hearing on January 17, 1978, the five-member ZBA, by a vote of its four Democratic members (the Chairman, a Republican, abstained), denied a certificate of location approval. Under the governing statute, C.G.S.A. Sec. 14-67k (formerly Sec. 21-17) it was required, in considering such an application, to take into account various community factors, including the nature of the surrounding property, proximity of churches, schools and public buildings, and the health and safety of the public.[3]
 
 
 4
 Yale appealed the ZBA's decision to the Connecticut Superior Court and on February 26, 1980, after an evidentiary hearing, State Trial Referee A. Frederick Mignone filed a 29-page detailed decision holding that the ZBA had denied the applicant a fair hearing, that its voting members had acted with an unlawful "predisposition and predetermination," and that the ZBA's actions were "capricious, unreasonable, and illegal as against public policy." Referee Mignone found that prior to the January 17, 1978, meeting of the ZBA, defendant Frederick Johnson, who was Assistant Director of Public Works, Chairman of the West Haven Town Committee of the Democratic party and brother of defendant Robert Johnson, Mayor of the city, had discussed with defendant Edward Formichella, one of the ZBA members, his views with respect to the Yale application and had consulted with defendants Formichella, Shannon, Vingiano and Soroker, regarding the action they would take on the application. Following this discussion, Soroker told the Chairman of the ZBA (Catania) that "Fred Johnson wants the Yale application to be killed." This was promptly accomplished when the four Democratic members voted to deny the application.
 
 
 5
 Despite his findings and conclusions Referee Mignone did not order the ZBA to issue its approval, which he had the power to do, if it appeared "as a matter of law there was but a single conclusion which the zoning authority could reasonably reach." Bogue v. Zoning Board of Appeals, 165 Conn. 749, 345 A.2d 9, 11 (1975); see also Corona's Auto Parts, Inc. v. Zoning Board of Appeals, 158 Conn. 244, 259 A.2d 618 (1969). Nor did he grant plaintiffs' motion to disqualify the four ZBA Commissioners who voted against the application. Instead, he remanded the case to the ZBA, instructing it "to grant a new hearing to the plaintiff and to act upon said application solely according to law."[4]
 
 
 6
 Plaintiffs subsequently requested a new hearing, which was held on October 15, 1980, with continuances on October 29 and November 19, 1980. Plaintiffs allege that, after the November 19th session had been closed, letters opposing the application from defendant Robert Johnson, then the Democratic Mayor of West Haven, and the Planning Director of the Planning and Zoning Commission, were, over their objection, read into the record. The ZBA thereupon voted unanimously to deny the application.
 
 
 7
 Rather than seek state court review of the denial, see C.G.S.A. Sec. 8-8,[5] plaintiffs secured from the Connecticut Legislature the passage of a private bill, P.A. 81-347, permitting Yale to bypass the ZBA and secure the certificate of location approval from the PZC rather than from the ZBA. The PZC issued the certificate on November 10, 1981 and the DMV issued the required license on March 23, 1982, four years after the ZBA's initial denial of their application for a certificate of location approval.
 
 
 8
 In the meantime, on March 27, 1981, after the ZBA had for a second time denied their application, plaintiffs commenced the present action under Secs. 1983 and 1985(3). The complaint, after reciting the foregoing factual background, alleges that in denying the plaintiffs' application the four defendant members of the ZBA acted individually and in concert with Frederick Johnson and under the improper influence of defendant Mayor Robert Johnson; that the defendants acted under color of state law; that the denial of the application was "irrational, arbitrary, or capricious, and contrary to state law;" that plaintiffs' right to conduct an automobile business at the West Haven location was "a property right protected by the Constitutions of the United States and the State of Connecticut" (Pars. 48, 54); and that the denial of the application deprived "plaintiffs of property rights in derogation of the plaintiffs' right to equal protection and due process of law, in violation of 42 U.S.C. Sec. 1983" (Pars. 58, 59, 60, 61) and in violation of 42 U.S.C. Sec. 1985(3) (Pars. 62, 63). The defendants' conduct is also alleged to violate Art. I, Secs. 1 and 11 of the Constitution of the State of Connecticut.[6] The complaint seeks, among other relief, damages for loss of business and goodwill during the period from January 17, 1978, through March 23, 1982 (when the application was finally approved), pain and suffering, punitive damages, and the fair market value of the use of the West Haven site for the foregoing period when it could not be used because of the denial of plaintiffs' application.[7]
 
 
 9
 After filing their answers, on December 19, 1983, defendants moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint. On September 4, 1984, Judge Dorsey, treating the motion as one under Fed.R.Civ.P. 12(c) for judgment on the pleadings filed a decision and order granting the motion. The district court ruled that plaintiffs' unilateral expectation of a ZBA license did not amount to a property right entitling it to due process protection under Sec. 1983, citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), or to equal protection, absent a claim that the ZBA would have or did in fact act differently with respect to some other similarly-situated applicant. The claim of a potential conspiracy based on Sec. 1985(3) was dismissed for failure to allege or intimate any political affiliation on the part of plaintiff Isacoff. The pendent state law claim was dismissed for lack of jurisdiction. From this order and the judgment entered thereon plaintiffs appeal.
 
 DISCUSSION
 
 10
 Upon this appeal we must accept all of plaintiffs' well-pleaded allegations as true. A complaint may properly be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, --- U.S. ----, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957)).[8]
 
 
 11
 Even assuming, as we must, that defendants engaged in egregious and politically-influenced procedural irregularities, the threshold question is whether plaintiffs' interest in obtaining ZBA approval of their application was one entitled to protection and enforcement by a federal court, which is a tribunal of limited jurisdiction. Section 1983, upon which plaintiffs depend, does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a license or a permit. If that were the case, every allegedly arbitrary denial by a town or city of a local license or permit would become a federal case, swelling our already overburdened federal court system beyond capacity. A federal court "should not ... sit as a zoning board of appeals." Village of Belle Terre v. Boraas, 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting); see Scudder v. Town of Greendale, Ind., 704 F.2d 999, 1002 (7th Cir.1983). Section 1983 entitles a person to sue only for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." In this case the complaint claims that plaintiffs were deprived of a "property" right in violation of the Fourteenth Amendment, which provides that no state may "deprive any person of life, liberty, or property, without due process of law," and that the defendants denied them equal protection of the laws in violation of the same Amendment.
 
 
 12
 In its landmark decision in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court made clear that to have a "property" interest entitled to Fourteenth Amendment procedural protection "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709. The Court went on to observe:
 
 
 13
 "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.
 
 
 14
 Similarly, the mere existence of reasonable procedures entitling a person to a hearing under state law does not give rise to an independent substantive liberty interest protected by the Fourteenth Amendment. Olin v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).
 
 
 15
 In deciding whether an applicant for a license or certificate of approval has presented a legitimate claim of entitlement under state law or merely a unilateral hope or expectation, we must bear in mind that the mere violation of a state statute does not automatically give rise to a violation of federal Constitutional rights, Crocker v. Hakes, 616 F.2d 237, 239 n. 2 (5th Cir.1980). Indeed, even an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim, Chiplin Enterprises, Inc. v. City of Lebanon, 12 F.2d 1524, 1528 (1st Cir.1983), at least when the applicant has a state law remedy. Otherwise every disappointed applicant, even though the state provided reasonably adequate redress, could invoke federal jurisdiction on the claim that the state administrative body acted arbitrarily in violation of his federal due process rights. To permit an influx of such cases into federal courts would violate principles of federalism, promote forum-shopping, and lead to unnecessary state-federal conflict with respect to governing principles in an area principally of state concern.
 
 
 16
 For these reasons the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Otherwise the application would amount to a mere unilateral expectancy not rising to the level of a property right guaranteed against deprivation by the Fourteenth Amendment. To create an entitlement out of the mere existence of procedural due process created by the state would put the federal cart before the state horse and open a Pandora's Box of unnecessary federal-state conflict.
 
 
 17
 Applying these principles to the present case, there can be no question that, according to the complaint, the defendants engaged in egregious misconduct, at least upon the first hearing of plaintiffs' application. However, the undisputed record is equally clear that plaintiffs were not entitled to a ZBA certificate of location approval as a matter of right. Had the ZBA defendants properly exercised their wide discretion under C.G.S.A. Sec. 14-67k (formerly Sec. 21-17), quoted in footnote 3, supra, they would, as mandated by that statute, have been required to take into account "the nature and development of surrounding property; the proximity of churches, schools, hospitals, public buildings or other places of public gathering; the sufficiency in number of other such yards or businesses in the vicinity; whether or not the location is within a residential district ...; the health, safety and general welfare of the public ...," and the like. Common experience indicates that in most communities an auto junkyard (even if its name is "Yale") is hardly a welcome eyesore. Thus there is no assurance that if the ZBA defendants had properly exercised their discretion they would have issued the requested certificate.
 
 
 18
 That plaintiffs' application might properly have been denied by the ZBA was recognized by the Connecticut Superior Court when it invalidated that body's initial action denying the certificate but refused plaintiffs' application for an order directing the ZBA to issue the requested certificate, citing Bogue v. Zoning Bd. of Appeals of Town of No. Haven, 165 Conn. 749, 345 A.2d 9 (1975). In Bogue the Connecticut Supreme Court stated:
 
 
 19
 "It is true that when on a zoning appeal it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires. Watson v. Howard, 138 Conn. 464, 470, 86 A.2d 67; Executive Television Corporation v. Zoning Board of Appeals, 138 Conn. 452, 457, 85 A.2d 904; Bishop v. Board of Zoning Appeals, 133 Conn. 614, 623, 53 A.2d 659; Colonial Beacon Oil Co. v. Zoning Board of Appeals, 128 Conn. 351, 355, 23 A.2d 151; see Walker v. Jankura, 162 Conn. 482, 491, 294 A.2d 536. In the absence of such circumstances, however, the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority. Guerriero v. Galasso, 144 Conn. 600, 608, 136 A.2d 497; Watson v. Howard, supra, 138 Conn. 469, 470, 86 A.2d 67." 345 A.2d at 11.
 
 
 20
 Since plaintiffs were not entitled as a matter of right to the ZBA certificate of location approval sought by them and there is no allegation that but for the ZBA members' alleged misconduct the ZBA would have been required to award them the requested certificate, they lack any property interest protectible under the Due Process Clause. It therefore becomes unnecessary for us to go into the issue of whether they were denied a fair hearing by the ZBA except to note that, although the conduct alleged to have occurred prior to the first ZBA hearing would have denied them due process if the effect had been to deprive them of a property right (which it did not), it is questionable whether the action of the ZBA members in reading into the record at the second hearing letters from the Mayor and others, even if prohibited by state law, was fundamentally unfair. In a matter of such basic concern to the community as the location of a junkyard the views of the city's mayor and other political officials with respect to the merits of the proposal would normally be of legitimate concern to the administrative body involved.
 
 
 21
 Decisions relied upon by appellants as supporting their claim of a property right to the ZBA certificate are clearly distinguishable. In Roy v. City of Augusta, 712 F.2d 1517 (1st Cir.1983), although the state statute did "not appear on its face to create a mandatory entitlement," id. at 1522, the Maine Supreme Judicial Court had held that as a matter of law the plaintiff (Roy) was entitled to the issuance of a pool and billiard room license. This decision of Maine's highest court, in the First Circuit's words, "would seem to have conferred upon Roy a property interest in the license. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ('The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except "for cause." ')." 712 F.2d at 1522. No such entitlement by order of the court (or otherwise) exists in the present case.
 
 
 22
 Similarly, when a person seeking the right to practice law has passed the bar examination and there is no indication that he is not a person of good moral character, his property interest, as distinguished from the absence of one in the present case, is readily apparent. Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). No such entitlement exists in the present case. Nor is this case comparable to many relied upon by appellants in which the plaintiff's vested property interest was clear or assumed. See, e.g., Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (protected "liberty" and "property" encompass freedom to pursue private occupation free of unreasonable government interference); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (liberty interest in being free to work in an occupation free of state-imposed restrictions based solely on race or nationality); Thompson v. Schmidt, 601 F.2d 305 (7th Cir.1979) (citizen has protected right to pursue private occupation free of unreasonable state regulation). Our research has failed to reveal any instance in which the absence of a fundamentally fair procedure has been held actionable under Sec. 1983 in the absence of a showing that it deprived the plaintiff of a property or liberty interest recognized by law.[9]
 
 
 23
 Plaintiffs also contend that the defendants' denial of their application for a ZBA certificate of location approval violated their equal protection rights. We disagree. Absent a claim that C.G.S.A. Sec. 14-67i (formerly Sec. 21-16), under which the ZBA acted, is unconstitutional on its face--and there is none--plaintiffs must allege and show that the defendants intentionally treated their application differently from other similar applications. See Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). Yet no such allegation of discriminatory purpose or conduct is made. The second amended complaint merely states that defendants' conduct was "in derogation of the plaintiffs' right to equal protection" (Compl. Pars. 38, 58, 59, 60, 61). Plaintiffs' brief states only that defendant Frederick Johnson's statement to ZBA members that he wanted the Yale application "killed" amounts to singling out "a particular applicant for arbitrary treatment without respect to the statutory criteria which the equal protection clause forbids." (Plaintiffs-Appellants' Brief 30). This is wholly insufficient to state an equal protection claim, absent the essential allegation that others were treated differently. Indeed, the principal decisions relied on by plaintiffs are distinguishable for the reason that different treatment of others was there alleged. See, e.g., Cordeco Development Corp. v. Santiago Vasquez, 539 F.2d 256 (1st Cir.), cert. denied, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976) (equal protection violation upheld when plaintiff accused defendants of failing to act on its sand excavation application (and subsequently granting a useless permit) while granting permits to a powerful family for five acres around plaintiff's property); Jones v. Lane, 568 F.Supp. 1113 (N.D.Ill.1983) (prisoner's equal protection claim alleged "arbitrary and capricious" differences in his treatment from that of similarly situated inmates); Ossler v. Village of Norridge, 557 F.Supp. 219 (N.D.Ill.1983) (upheld equal protection claim to effect that defendants denied plaintiff's rezoning but rezoned the property for a later owner). Yale's case is more like Beacon Syracuse Associates v. City of Syracuse, 560 F.Supp. 188 (N.D.N.Y.1983), in which the court dismissed plaintiff's equal protection claim for failure to allege the manner in which plaintiff was treated differently from others similarly situated.
 
 
 24
 We have carefully considered plaintiffs' other claims and find them to be without merit. The judgment of the district court is affirmed.
 
 
 
 [1]
 The complaint's request for injunctive relief compelling the issuance of a certificate of location approval by the ZBA became moot when the Connecticut legislature passed a private act entitling plaintiffs to the relief demanded. See p. 57, infra. As a result the district court on December 22, 1981, dismissed this portion of the complaint, relegating plaintiffs to a claim for damages only
 
 
 [2]
 C.G.S.A. Sec. 14-67i provides in pertinent part:
 "Sec. 14-67i. (Formerly Sec. 21-16). Certificate of approval of location; license required. Exceptions. (a) No person, firm or corporation shall establish, operate or maintain a motor vehicle junk yard or motor vehicle junk business unless a certificate of approval of the location to be used therefor has been procured from the selectmen of the town, the mayor of the city or the warden of the borough wherein such yard or business is located or is proposed to be located, except that, in any city or town having a zoning commission, such certificate shall be procured from the zoning commission, certifying that such location is suitable for the proposed use, consideration being given to the factors specified in section 14-67k, nor unless a license to establish or maintain such a yard or such a business has been obtained from the commissioner of motor vehicles as provided in section 14-67l."
 
 
 [3]
 C.G.S.A. Sec. 14-67k provides that:
 "[s]uch local authority, in considering such application, shall take into account the nature and development of surrounding property; the proximity of churches, schools, hospitals, public buildings or other places of public gathering; the sufficiency in number of other such yards or businesses in the vicinity; whether or not the location is within a restricted district established as provided in section 14-67s; the health, safety and general welfare of the public and the suitability of the applicant to establish, maintain or operate such yard or business and to receive a license therefor."
 
 
 [4]
 On May 23, 1980, Yale and Isacoff began an action in the United States District Court for the District of Connecticut seeking damages under 42 U.S.C. Sec. 1983 and injunctive relief. In a Memorandum of Decision dated July 16, 1980, the district court sua sponte dismissed the claims as not ripe, since plaintiffs had not yet sought nor received a new hearing before the ZBA, as ordered by the Superior Court
 
 
 [5]
 C.G.S.A. Sec. 8-8 provides in pertinent part:
 "Any person or persons severally or jointly aggrieved by any decision of said [zoning board of appeals] ... may, within fifteen days from the date when notice of such decision was published in a newspaper pursuant to the provisions of section 8-3 or 8-7, as the case may be, take an appeal to the superior court for the judicial district in which such municipality is located...."
 
 
 [6]
 Art. I, Secs. 1 and 11 of the Constitution of the State of Connecticut provide:
 "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." Sec. 1.
 "The property of no person shall be taken for public use, without just compensation therefor." Sec. 11.
 
 
 [7]
 As noted above, n. 1, the complaint's prayer for injunctive relief was, on December 22, 1981, dismissed as moot in view of the PZC's issuance of a certificate of approval on November 10, 1981, pursuant to the private bill passed by the Connecticut Legislature
 
 
 [8]
 Even under this standard dismissals in similar circumstances have been affirmed. See, e.g., Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524 (1st Cir.1983) (affirming dismissal of plaintiff's Sec. 1983 claim for damages based on defendants' five-year delay in granting permit to build apartment complex); Rogin v. Bensalem Township, 616 F.2d 680, 694 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981) (upholding dismissal of petitioners' cross-claim for failing to state a Sec. 1983 due process claim since "beyond making a general assertion of denial of due process, [it] fails to allege that Bensalem's permit and appellate procedures were constitutionally deficient in any way")
 
 
 [9]
 Although Rogin v. Bensalem TP., 616 F.2d 680 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), might at first blush appear to support appellants' position, the developer's due process claim against the Township officials (which was dismissed) was there based on the allegation that denial of further permits would harm a real estate development that had already been "substantially undertaken" through construction and improvements on the developer's property
 Similarly, in Sucesion Suarez v. Gelabert, 701 F.2d 231 (1st Cir.1983), plaintiffs alleged that the government's denial (on environmental grounds) of a sand extraction permit would render useless their property, which could only be used for sand extraction, would destroy their investment in sandmining machinery, and would preclude their realization of government-conferred benefits. Moreover the Department of Natural Resources had initially granted plaintiffs a permit, which the district court, despite its "highly conditioned characteristics" (it was revocable and temporary) found entitled them to "some procedural protection." Not even such a marginal property basis for invoking due process protection exists in the present case.