Aileen **SCHWARTZ**, Plaintiff-Appellant,

v.

The **MAYOR'S COMMITTEE ON the JUDICIARY OF the CITY OF NEW YORK, by its Chairman David G. Trager, and its Executive Secretary, Paul D. Siegfried, and the City of New York,** Defendants-Appellees.

**No. 811, Docket 86–7954.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1987.

Decided April 6, 1987.

 

Jacob D. Fuchsberg, New York City (The Jacob D. Fuchsberg Law Firm, New York City, Joseph Brophy, of counsel), for plaintiff-appellant.

Lucy A. Cardwell, Asst. Corp. Counsel, New York City (Doron Gopstein, Acting Corp. Counsel of the City of New York, June A. Witterschein, Assistant Corp. Counsel, of counsel), for defendants-appellees.

Before LUMBARD, KEARSE, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Aileen Schwartz, formerly a Judge of the Family Court in the City of New York, appeals from an order entered by Judge Owen, in the Southern District of New York, granting the defendants' motion for summary judgment and denying her request for similar relief. Schwartz contends that the process by which the Mayor's Committee on the Judiciary of the City of New York ("the Committee") refused to recommend her reappointment to the bench deprived her of her constitutional right to due process. We affirm.

Appellant was first appointed to the Family Court in 1975; her ten-year term expired on December 28, 1985. On April 11, 1978, Mayor Koch issued Executive Order No. 10 creating the Mayor's Committee for the purposes of "evaluat[ing] incumbent judges for reappointment," and for "determin[ing] which of the fully qualified candidates are best qualified for judicial office." Near the end of her term, Schwartz applied to the Mayor's Committee for consideration for reappointment.

After receiving Schwartz's application, the Committee sought and obtained both positive and negative information about the applicant from numerous sources. To encourage candid responses, the Committee promised, and is required by the Mayor's Executive Order, to keep confidential the information it receives. After completing its investigation, the Committee requested that Schwartz attend a meeting in October, 1985.

Prior to the meeting, Schwartz was not notified of any complaints or charges against her. At the meeting, however, Schwartz was informed generally of the Committee's concerns about her reappointment, especially her ability to "relate" effectively to attorneys and court personnel. That evening, the Committee informed Schwartz of its decision not to recommend her reappointment.

Schwartz then obtained counsel who contacted the Committee's Executive Secretary about the decision. The Executive Secretary stated, again in general terms, that the Committee was primarily concerned with Schwartz's ability to manage her calendar and the disrespect with which she treated court personnel.

Schwartz filed a formal petition for reconsideration with the Committee together with various documents she felt would address the Committee's concerns. The Committee denied the petition and determined not to reconsider her application for reappointment. Having failed to receive the Committee's recommendation, the Mayor did not reappoint Schwartz.

Schwartz then instituted this action against the Committee, its chairman, executive secretary and the City of New York pursuant to 42 U.S.C. § 1983 (1982), claiming that she had a legitimate expectation of reappointment and that the Committee's procedures denied her due process of law. She seeks $5,000,000 in damages.

In order to prevail, Schwartz must have had constitutionally protected property or liberty rights to which the Fourteenth Amendment's procedural due process protections would attach. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

█ Schwartz first argues that the Committee's failure to recommend her reappointment deprived her of a constitutionally protected property right. To possess such a right there must be "a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. We can discern none here.

Pursuant to the New York Family Court Act, the Mayor appoints Family Court judges within New York City for ten-year terms. 29A N.Y.Jud.Law § 123 (McKinney 1983). He is charged with selecting "persons who are especially qualified for the Court's work by reason of their character, personality, tact, patience and common sense." 29A N.Y.Jud.Law § 124 (McKinney 1983). Judges seeking reappointment are subject to the same discretionary standards as candidates seeking a judicial appointment for the first time. There is simply no statutory or constitutional basis for finding the creation of a constitutionally protected property right.

Moreover, there is nothing in the Mayor's Executive Order or the Committee procedures which establishes any right to reappointment. The Executive Order requires the Committee to:

§ 2(b) Evaluate and conduct all necessary inquiry of those persons whose character, ability, training, experience, temperament and commitment to equal justice under law fully qualify them for judicial office;

(c) Consider all relevant information to determine which of the fully qualified candidates are best qualified for judicial office;

\*     \*     \*     \*     \*     \*

(e) Evaluate the qualifications of each incumbent judge for reappointment to judicial office and report the Committee's recommendation to the Mayor....

Because the Order does not state otherwise, the necessarily discretionary criteria in sections 2(b) and 2(c) must be deemed applicable to incumbents as well as new candidates.

Nor is there anything in the Committee's procedures or policies establishing a practice to recommend reappointment. The Committee procedures provide for the same type of investigation of incumbents as of new applicants. In addition to the criteria noted above for determining a candidate's fitness, the Committee considers the judge's performance during his preceding term. Certainly, the candidate's performance as a sitting judge is the most relevant factor. Finally, the Committee's right to refuse to recommend a candidate for reap-

pointment is expressly stated in its procedures.[1]

Schwartz argues that it was her "understanding that incumbent judges of proven competence were routinely reappointed...." However, the fact that many, or even most, incumbent judges have been reappointed cannot operate to raise appellant's "subjective expectation" to a constitutionally protected right, especially when doing so would contradict the relevant statutes and rules. *Leis v. Flynt*, 439 U.S. 438, 442–43, 444 n. 5, 99 S.Ct. 698, 700–01, 701 n. 5, 58 L.Ed.2d 717 (1978) (per curiam). Appellant has failed entirely to demonstrate any "mutually explicit understanding" sufficient to establish a property right. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ Schwartz further argues that the Committee's failure to recommend her reappointment implies that she is unqualified for the job, and so damaged her reputation in the legal community that all future judgeships and other legal employment will be foreclosed to her. Thus, she argues the Committee has violated her right to liberty.

Two conditions must be met before the appellant can successfully claim a deprivation of liberty: (1) the Committee must have published a charge against her so serious that it would "damage [her] standing and associations in [the] community"; and (2) she must show that the stigma of the Committee's charges will foreclose a "range of employment opportunities" to her. *Roth*, 408 U.S. at 573–74, 92 S.Ct. at 2707. The reasons for the Committee's failure to recommend Schwartz's reappointment were never published. Without publication, the Supreme Court has stated that an individual's liberty claim is "doomed".

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 n. 13, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985). Moreover, the Committee's action does not necessarily imply that the appellant was unqualified, rather it indicates that they found she was not one of the *best* qualified candidates. The only stigma in this case is that which may result from Schwartz's failure to be reappointed at the expiration of her term. If this were sufficient to implicate a liberty interest then, as Judge Owen noted, "every government employee terminated without consent would have a due process liberty interest claim."

Nor has Schwartz established the foreclosure of a "range of opportunities" in the legal field. *Roth*, 408 U.S. at 574, 92 S.Ct. at 2707. "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575, 92 S.Ct. at 2708 (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895–96, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961)).

■ The Committee Procedures and Policies require only that "The candidate ... be informed of and ... have an opportunity to be heard by the Committee on the issues concerning the candidate before a final recommendation is reached." The mandating of such procedures did not of itself create a property or liberty right. *See Olim v. Wakinekona*, 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir.1985). Moreover, it is undisputed that the Committee met with Schwartz and discussed with her its concerns about her performance. Admittedly, this was done in a manner so as to preserve the

---

1. The Committee's procedures and policies on incumbents are set out fully as follows:

14. *Reappointment.* An incumbent judge eligible for reappointment will be fully investigated and interviewed in person by the Committee before being considered for reappointment. The candidate will be informed of and will have an opportunity to be heard by the Committee on the issues concerning the candidate before a final recommendation is reached. Special consideration will be given to such criteria as judicial ethics, temperament, legal ability, and industriousness during his/her preceding term as well as the candidate's knowledge of current law and procedure of his/her court (with due consideration as to whether the judge has been regularly assigned to a court other than the one to which appointed). The Committee's recommendation for or against reappointment shall be certified in writing by the chairman and hand-delivered to the Mayor.

confidentiality of the Committee's information.

■ Schwartz was informed that her ability to "relate" to people in court was of concern to the Committee. Moreover, she had an opportunity to respond, as evidenced by her own affidavit. We agree with Judge Owen that there was no requirement for a "formal particularization of Committee Concerns." He stated, and we agree, that "it is sufficient if a candidate is informed as to the general area or areas as to which the Committee is troubled and is allowed to be heard."

The Committee can be of real assistance to the Mayor only if the sources of its information are kept confidential. Those who respond to the Committee's inquiries can be helpful only if they feel free to say what they know without concern about embarrassment or retaliation. This is especially true of those who must continue to work with, and appear before, members of the judiciary. Consequently, the extent to which any candidate is advised of the details and the source of information relevant to judicial fitness must be left to the discretion of the Committee.

The district court's order granting summary judgment for the defendants is affirmed.