METTEE ET AL. *v.* COUNTY COMMISSIONERS OF HOWARD COUNTY ET AL.

[No. 86, October Term, 1956.]

358

*Decided February 15, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and NILES, J., Chief Judge of the Eighth Judicial Circuit, specially assigned.

*Ambrose T. Hartman,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellants.

*Charles E. Hogg* for the County Commissioners of Howard County.

*Paul F. Due,* with whom was *John L. Clark* on the brief, for the Pumphreys and Messrs. Chase, Maddox and Hawkins.

HENDERSON, J., delivered the opinion of the Court.

This appeal in a zoning case is from a decree of the Circuit Court for Howard County declaring "the property which has been the subject matter of these proceedings, namely, all that property contained within the sixteen square mile area mentioned herein" to be "zoned as 'R' residential as originally classified under the Comprehensive Zoning Plan of January 12, 1954". The decree also declared amendments to the original zoning plan adopted on July 27, 1954, and April 5, 1955, to be invalid.

The appellants filed a bill of complaint on April 28, 1955, against the County Commissioners, the Planning Commission and the Zoning Commissioner, and Messrs. Pumphrey, Chase, Maddox and Hawkins, challenging the validity of a resolution of the County Commissioners adopted April 5, 1955, rezoning a portion of a 242 acre tract of land known as the Pumphrey Farm and owned by the appellees, Chase, Maddox and Hawkins, from an "RR" district to an "R" district. The

farm is located at the northern end of, and within, a larger tract containing sixteen square miles, lying southeast of the Columbia Pike and southwest of the Old Annapolis Road. This larger tract had been originally zoned "R", residential, with the exception of a few "B2", commercial, areas, on January 12, 1954. It was rezoned "RR", rural residential, on July 27, 1954, with the exception of a 200 foot strip along Old Annapolis Road, and two small areas at road intersections which were left in the "R" classification.

The primary difference between the two classifications is that in the "R" classification the minimum lot size is about one-half acre (20,000 square feet without utilities and 10,000 square feet with utilities), whereas in the "RR" classification the minimum lot size is one acre. (The utilities referred to are public sewer and water connections.) The appellees, Chase, Maddox and Hawkins, had contracted to buy the farm from Pumphrey on February 23, 1955. They filed an application for reclassification, in which Pumphrey joined, on the same day. The application was disapproved by the Zoning Commissioner and the Planning Commission, but approved by the County Commissioners, after hearing on March 23, 1955, by a vote of two to one. The seventh paragraph of the bill alleged that no facts were adduced at that hearing to show a change of conditions, or that the "RR" classification was erroneous; that no testimony was produced to show that a change would be in the public interest; and that the Board's action was illegal, arbitrary, and unconstitutional.

An answer was filed by the appellees Chase, Maddox and Hawkins admitting most of the facts alleged, except those set out in the seventh paragraph, and alleging that the rezoning on July 27, 1954, was illegal and unconstitutional, because there was no change of conditions or mistake shown that would justify a rezoning, and because the reversal of the Board's original classification of January 12, 1954, was made as the "result of a plebiscite". The County Commissioners filed an answer denying the allegations of paragraph seven of the bill and alleging that their reclassification of July 27, 1954, was erroneous. Admitting that there were "no precise facts" before them to show any substantial change in the area between July 27,

1954, and March 23, 1955, they allege that there were likewise no substantial changes between January 12, 1954, and July 27, 1954.

The respondents Chase, Maddox and Hawkins also filed a cross-bill alleging that the change in classification made by the County Commissioners on July 27, 1954, "purporting to change the zoning of the farm of your Cross-Complainants, and other properties nearby, is illegal, nugatory, arbitrary, unconstitutional and void", and praying that the court declare the resolution void, and require the Zoning Commissioner to amend the zoning map accordingly. The cross-respondents filed a demurrer and answer, setting up laches and estoppel, among other things, and asserting that the court lacked jurisdiction to enter a declaratory decree, affecting the properties of persons not parties to the suit in an area of sixteen square miles, and circumventing the administrative processes. The answer also challenged the standing of the cross-complainants to attack the validity of the resolution of July 27, 1954. The County Commissioners filed an answer to the cross-bill, admitting some of the allegations, calling for proof of others, and generally standing upon the allegations of their answer to the original bill, containing the admission that their rezoning of July 27, 1954, had been erroneous.

There is little dispute as to the basic facts brought out in the hearing in the court below. As noted in *Wakefield v. Kraft,* 202 Md. 136, 139, the first zoning map for Howard County was adopted July 27, 1948, with simple classifications, Residential, Commercial A and Commercial B. In 1953, Mr. C. William Brooks, a recognized expert, who had a hand in the original zoning, was again employed as a zoning adviser. Mr. James Macgill, the first Zoning Commissioner, had then been succeeded by Mr. Custer. Mr. Brooks recommended that the sixteen square mile area in question be designated as "RR", but Mr. Custer disagreed. At a public hearing on January 9, 1954, Mr. Macgill, who had been the first Zoning Commissioner and subsequently became counsel to the Planning Commission, urged the protestants "not to delay this matter", pointing out that a change would probably require readvertising and a further hearing. He stated that "for the present the

residence [lot] area in Howard County is only 5,000 square feet and personally I think it is much wiser to go ahead and take what protection is offered. * * * let us get this thing through and let the dust settle and take another look at it and then make the changes that need to be made." The County Commissioners, and in fact all the persons present, agreed to this suggestion. On January 12, 1954, the County Commissioners adopted the classification proposed by Mr. Custer, and the new zoning map was adopted. See *Board of Zoning Appeals v. Meyer*, 207 Md. 389, 393. On January 21, 1954, Mr. Dawson Lee, along with other objectors at the hearing on January 9, made application to have the area rezoned "RR". This was opposed by Mr. Custer and the Planning Commission. A public hearing was duly held on February 18, 1954. Counsel for the protestants stated he could affirmatively show that "an overwhelming number of the landowners, * * * in that section desire this change". The Board did not render a decision at that time. On May 17, 1954, Mr. Raphel, who succeeded Mr. Custer as Zoning Commissioner on May 15, 1954, was directed by a member of the Planning Commission to tabulate the number of objectors and the amount of land owned by them in the area. The results showed that a large majority of the owners favored the change. There was some testimony that it was favored by 95%. On July 12, 1954, the Zoning Commissioner and the Planning Commission recommended approval of the Lee petition, and the change was approved by the County Commissioners on July 27, 1954.

. The evidence produced at the hearing below showed that the sixteen square mile area had always been rural and agricultural in character, with rather large farms, chiefly dairy farms, and country estates. There was testimony that there were only about 250 families in the entire area. There has been no change in the character of the area, with the exception of two subdivisions laid out at the intersection of two intersecting highways, which were excepted in the rezoning of July 27, 1954. The Chancellor found that there had been no fundamental change in conditions since the original zoning in January, 1954, and that there was no mistake in the original zon-

ing. He held that the subsequent actions were invalid, and the whole area should revert to its original status.

Whether the Chancellor was justified in entering a decree declaring that the whole sixteen square mile area be zoned "R" is open to serious question. The bill of complaint sought relief only as to the Pumphrey farm, and the cross-bill did not seek relief except as to "the farm of your cross-complainants and other properties nearby". Moreover, Art. 14, sec. 360, et seq. of the local law for Howard County, as enacted by Ch. 19, Acts of 1948 and Ch. 604, Acts of 1953, differentiates between cases where applications are made to the Zoning Commissioner and Board of Zoning Appeals, and cases where the County Commissioners establish the boundaries of districts and prescribe the uses therein. Sec. 361 provides that in the latter case the Commissioners shall hold a public hearing after published notice, and "shall have the power to amend, supplement or repeal the regulations or restrictions adopted by them, provided that before doing so they shall follow the same procedure with respect to notice and public hearings as is herein provided for the original regulations and restrictions." This statutory procedure was not followed by the cross-complainants, who for the first time in their cross-bill attacked the validity of the rezoning of July 27, 1954. The only official action taken since that date by the County Commissioners was a reclassification of the area comprising the Pumphrey farm, and it may well be that the court below was confined to a consideration of that question. We noted in *Baltimore v. Seabolt,* 210 Md. 199, 210, that there are at least some limits to declaratory relief in this field, particularly where it by-passes administrative action. We find it unnecessary to consider the point, however, since we do not agree with the Chancellor's finding that the rezoning of July 27, 1954, was arbitrary and invalid.

The appellees strongly contend that the action of the County Commissioners was improperly based upon "a plebiscite of neighbors or for their benefit." The phrase was coined by Judge Markell in *Benner v. Tribbitt,* 190 Md. 6, 20. That case did not involve zoning, but the refusal of the Commissioners of Denton to issue a permit for a filling station. The town possessed no zoning powers and had not attempted to pass a

zoning ordinance. The jury made a finding that the Commissioners refused the permit solely on the ground that adjacent property owners objected. Judge Markell noted that "there is a wide difference between exercise of the police power in accordance with a comprehensive zoning plan, which imposes mutual restrictions and confers mutual benefits on property owners, and arbitrary permission to A and prohibition to B to use their own property, at the pleasure of neighbors or at the whim of legislative or administrative agencies." In *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 190, the "plebiscite" passage was quoted in a case where the rezoning of a piece of industrial property to residential was found to be wholly unsupportable on the facts, and induced solely by a neighborhood desire to keep the property vacant as a "Dickens-like 'children's playground'". In *Walker v. Talbot County,* 208 Md. 72, 84, a case involving the adoption of a master plan for a zoning ordinance, it was said that "Of course, the object of the public hearings was to give the public an opportunity to criticize and recommend changes in the Ordinance", and it was also noted that "The large majority of those present were in favor of the proposed Ordinance." Again, in *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36, 47, after citing the *Benner* and *O'Rourke* cases, and *Kahl v. Consolidated Gas, El. Lt. & Power Co.,* 191 Md. 249, it was said: "The latter case and *Anne Arundel County v. Snyder,* 186 Md. 342, 46 A. 2d 689, indicate that the wishes of residents of a neighborhood may be considered by the legislative body in enacting a restrictive regulation; but, as was said in the *Kahl Case,* 'A restrictive act may not be passed or a permit refused merely because the community wants it.' * * * the guiding principle would seem to be * * * the benefit of the community at large. * * * The opinion of the neighbors is doubtless of some weight in appraising the probable effect upon land values in a community of a proposed change * * *." In the latest case on the point, *Montgomery County Council v. Scrimgeour,* 211 Md. 306, 313, it was said that "A plebiscite of the neighborhood does not determine zoning."

Obviously, an exercise of the police power cannot be made to depend upon a count of noses, but, on the other hand, the

very fact that a public hearing is required before the adoption or reconsideration of a master plan indicates that public sentiment on the proposal is not wholly irrelevant. The zoning authorities are by no means bound to regard the wishes of property owners, but their decision is not to be condemned simply because it adopts the views advocated by a majority of the persons primarily affected.

Moreover, it seems clear that in the instant case the proponents of the change from "R" to "RR", which was adopted on July 27, 1954, were not actuated by a desire to restrict the use of any particular piece of property, but rather by a desire to adopt uniform restrictions, that would affect their own properties, in the interests of the whole community and its future development. Mr. Pumphrey himself seems to have been in favor of the rezoning to "RR" at that time. The record shows that the difference of opinion lay in the views as to policy. Generally, the proponents felt that the larger lots would discourage too rapid subdivision growth, with its strain on the financial resources of the County in the fields of sanitation, education, roads and other services, and promote developments of a higher class. It was agreed that there was abundant space reserved for "R" classification in other areas, and that the area in question should retain, so far as possible, its rural character. Generally, the opponents took the view that the larger lots would tend to prevent development and the movement of new residents into the area. It was clearly shown that it would be more profitable for a developer to lay out his development in smaller lots, which would be within the price range of more potential customers. There was testimony that the value of land for development purposes would be from 25% to 50% greater under the "R" classification. The issue is not only fairly debatable but was hotly debated. Mr. Brooks and Mr. Raphel advocated one view, and Mr. Custer the other. The County Commissioners seem to have alternated between the two.

We come, then, to the crucial question in the case. The Chancellor took the view that the action of the County Commissioners on January 12, 1954, was controlling, in the ab-

sence of any substantial change in conditions subsequent to that date, and in the absence of evidence of original error or mistake. We have frequently said that a presumption of reasonableness attaches to an original zoning, but that a like presumption applies to rezoning as well, though not with the same weight. *N. W. Merchants Term. v. O'Rourke, supra; Wakefield v. Kraft, supra; Offutt v. Bd. of Zoning Appeals,* 204 Md. 551; *Serio v. City of Baltimore,* 208 Md. 545. In the three cases last cited, and in *Hoffman v. City of Baltimore,* 197 Md. 294, it was found that there was an error in the original zoning, which time had confirmed. All of the cases recognize that if the question is fairly debatable the courts will not hold the zoning to be unreasonable. It is true that there must be something more than a change of mind to justify rezoning. It is presumed that the original zoning was well planned and designed to be permanent, but the presumption must be applied to the facts in the particular case.

In the instant case the presumption arising from the original zoning loses much of its force when we consider the statements made at the hearing prior to the adoption of the master plan. In effect, the proponents of the change were told by Mr. Macgill that the matter would receive further consideration. The County Commissioners acquiesced in this statement. Indeed, Mr. Moxley, who was chairman of the County Commissioners at that time, testified that he asked the group present "to allow us to go ahead and. adopt. this map * * * and petition us for a hearing, and we would grant them a hearing". He was confirmed in this statement by Mr. Gould, who testified that the proponents of the change were told "if we would not so contest it, that they would give every consideration to an application for amendment * * *." Mr. Lee testified they were told that a petition for rezoning would receive consideration. "I add one step further and say I was even told that there would be no trouble whatsoever in going from a lower to a higher classification in this area." In view of these statements, uncontradicted in the record, it can hardly be maintained that the adoption of the "R" classification for the area was more than a tentative one, or that it was intended to be permanent and final. We feel that the rule against so called

zoning by plebiscite is a salutary one, and in this case we have no disposition to depart from or weaken it. The special circumstances surrounding the action of January 12th lead us to the view, however, that the protestants at that hearing were officially, if informally, told that this particular question was being left open at that time. The action on July 27th was thus simply a completion of the action begun in January and in substance a part of the original zoning.

In *Wakefield v. Kraft, supra* (p. 145), one of the points relied on to support a rezoning was the fact that Mr. Brooks, in a preliminary study, had put in a commercial zone at the intersection in question, but omitted it in the approved plan because of doubt as to where the Columbia Pike would be relocated. It was argued that the change in classification merely supplied an omission in the original plan, despite the fact that it was there zoned as residential. It was held that the County Commissioners were not foreclosed from making the reclassification. Judge Hammond, speaking for the Court (p. 149) said: "They recalled, undoubtedly, that it would have been done in 1948, if the relocation of the road then had been known. Thus, essentially, making the intersection Commercial A was part of an original comprehensive plan for uniform zoning of the whole County." So, in the instant case, we think the County Commissioners even more clearly indicated, and in fact announced, that their action in zoning the area "R" in the Comprehensive Plan was not final, but subject to further consideration. The final determination was made on July 27, 1954, and we think it was fairly debatable.

Since it seems to be conceded that there was no subsequent change to support the rezoning on April 5, 1955, we think the latter action must fall. It is perfectly clear that the mere fact that a lower classification would make the property more valuable will not justify reclassification, in the absence of a showing that the owners are thereby deprived of any reasonable use. *Walker v. Talbot County, supra; Serio v. City of Baltimore, supra.* It follows that the prayer of the bill that the County Commissioners be enjoined from altering the zoning map, as adopted on July 27, 1954, in relation to the Pumphrey

property, should have been granted, and the cross-bill dismissed.

> *Decree reversed and case remanded for the passage of a decree in accordance with the views here expressed, costs to be paid by the appellees Chase, Maddox and Hawkins.*