Dwight G. NELSON, Plaintiff–Appellant,

v.

CITY OF SELMA, Defendant–Appellee.

No. 87-2948.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided Aug. 11, 1989.

---

Kenneth B. Bley, Cox, Castle & Nicholson, Los Angeles, Cal., for plaintiff-appellant.

David A. Fike, Jackson, Hargrove, Hillison & Emerich, Fresno, Cal., for defendant-appellee.

Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.

SCHROEDER, Circuit Judge:

The plaintiff, Dwight G. Nelson, filed this action claiming that he was denied due process and equal protection of the laws when the Selma City Council denied his application to rezone his property to permit additional development. He appeals from the district court's judgment for the defendant after a bench trial. The principal issue before us is whether the district court erred in holding that the city council's action was rationally related to promotion of public health, safety or welfare. Nelson argues that the district court should have found that the city council acted arbitrarily when it rejected his application for rezoning in apparent response to the concerns voiced by residents of the area that development of the requested density would adversely affect the environment of the neighborhood. We affirm.

In 1979, plaintiff's predecessor in interest, Larry J. Raven, owned 52 acres of land located in Fresno County immediately adjacent to Selma (the "Raven property"). The Raven property was planned and zoned for agriculture. In March, 1979 Raven sought and obtained a general plan amendment in which 13 acres of the Raven property was planned to be rezoned as R–3, high-density residential. The Raven property was annexed to Selma in June 1980. The property, including the 13 acres, was zoned R–1, low-density residential, until ready for development. In December, 1981 Dwight Nelson bought the Raven property for approximately $900,000. In February, 1982 Nelson sought and obtained rezoning of a portion of the Raven property, not including the 13 acres, to R–2, medium-density multiple-family residential. Selma's general plan was amended in 1983, and the 13 acres continued to be planned as high-density residential.

In October, 1984 Nelson submitted an application to Selma to rezone the remaining 39 acres of the Raven property, including a request that the 13 acres be rezoned to R–3, high-density residential. It is the denial of that request with which we are concerned here. The planning commission recommended that the city council adopt the rezoning. At a city council meeting on January 7, 1985 a number of residents of the area adjacent to the Raven property opposed Mr. Nelson's application to rezone the 13 acres. The city council voted to continue the hearing on the application to May, 1985, and directed its staff to prepare an amendment to the general plan which

would change the designation of the 13 acres to low-density residential.

At a second public hearing held February 19, 1985, the residents of the area again opposed Nelson's application for rezoning. On May 6, 1985 the city council first amended the general plan to change the designation of the 13 acres from high density residential, then denied Nelson's application for rezoning of the 13 acres. With the 13 acres zoned as R–1 the value of the Nelson property was approximately $600,-000. Because the property could only be developed at a loss to Nelson, Nelson deeded the property back to Raven in order to avoid foreclosure.

Nelson then filed this action in district court under 42 U.S.C. § 1983, alleging that the city's denial of his application for rezoning violated his rights to substantive due process and equal protection of the laws, and constituted a taking of his property without the payment of just compensation. The parties do not dispute the ripeness of Nelson's claims. The council's action rejecting the proposed project and limiting density to R–1, single family, constituted "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." See MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); see also Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1453–54 (9th Cir.1987), amended on other grounds, 830 F.2d 968 (1987), cert. denied, —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988).

The district court granted summary judgment against Nelson on his taking claim, finding that it was based only on alleged interference with Nelson's investment-backed expectations, rather than a contention that the city council's action denied Nelson all economically viable use of the land. See Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); Furey v. City of Sacramento, 780 F.2d 1448, 1454–55 (9th Cir. 1986). That ruling is not challenged on appeal. The court denied summary judgment on Nelson's due process and equal protection claims. The district court found that material issues of fact existed as to whether the city council's actions had any rational relationship to the public health, safety, or welfare in light of the apparent effect that the opposition of Nelson's neighbors had on the city council's decision.

After a bench trial on the due process and equal protection claims, the district court granted judgment for the city, and held that the denial of Nelson's application for rezoning did not deprive Nelson of his rights to due process and equal protection because it was rationally related to the legitimate government purposes of maintaining the character and integrity of the single family neighborhood, preventing undue concentration of population, lessening traffic congestion and maintaining property values. The district court found that the city council could reasonably have concluded that the development of the 13 acres as high density residential would be incompatible with existing and planned single family uses in the area near the proposed development.

On appeal, Nelson contends that the district court erred in ruling that the city did not violate his constitutional rights by rejecting his application for rezoning. Nelson argues that there was no evidence to support the district court's conclusion that the city council's action was rationally related to a legitimate government interest. He argues that the only reason for the denial of the zoning change was the unreasoning opposition of the neighbors, and that opposition by some elements in the community, without more, is not a sufficient basis for restrictive zoning, citing City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

■ Nelson challenges the ordinance based upon the substantive component of the due process clause and denial of equal protection. Because Nelson does not contend that he has been discriminated against as a member of a suspect or quasi-suspect class, or that the city's action somehow deprived him of a fundamental right, the test for determining whether Nelson was

denied equal protection of the laws is the same as the standard determining whether he was denied due process—the city council's action should be upheld if it bears a rational relationship to a legitimate state interest. *See Burlington Northern Railroad Co. v. Department of Public Services,* 763 F.2d 1106, 1109 (9th Cir.1985).

The Supreme Court has recently cast doubt upon the viability of a "substantive due process" cause of action as a supplement to a cause of action involving a specific provision of the constitution. *See Graham v. Connor,* — U.S. ——, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Because we hold that the district court was correct in granting judgment to the defendant on both Nelson's substantive due process and equal protection claims, for which the standards in this case are interchangeable, we need not address the question of whether the complaint stated a claim for violation of substantive due process in addition to the claim of denial of equal protection.

■ To uphold the council's action, we need not find that the zoning requested by appellant would actually have adversely affected the public health, safety or welfare; the issue before us is whether the decision to change the zoning of the 13 acres to low-density residential was itself rationally related to the promotion of the public health, safety or welfare. *See Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254; *Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974); *Construction Industry Ass'n of Sonoma County v. City of Petaluma,* 522 F.2d 897, 906 (9th Cir.1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976). If we find that the rational relation of the zoning actions to legitimate governmental interests is at least fairly debatable, the action must be upheld. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981).

■ There is ample evidence in the record to support the district court's finding that the rejection of Nelson's application for rezoning was rationally related to legitimate government interests. The preservation of the character and integrity of single-family neighborhoods, prevention of undue concentration of population, prevention of traffic congestion and maintenance of property values are all legitimate purposes of planning and zoning. *Village of Belle Terre,* 416 U.S. at 9, 94 S.Ct. at 1541. The opposition of neighbors to a development project is also a legitimate factor in legislative decisionmaking. *Burns v. City of Des Peres,* 534 F.2d 103, 110 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

The district court found that there were a total of 268 apartment units either existing or planned within 1500 feet of the proposed complex, and that there were already in existence or planned five apartment complexes within a one-half mile radius of the single-family neighborhood located near the 13 acres. Several residents of the neighborhood testified at the public hearings of their concern that the proposed development would increase traffic and change the character of the single-family neighborhood. The city's general land use policy provides that:

> To the fullest extent practicable encroachment of higher intensity residential uses into residential neighborhoods shall be prevented. Such uses are acknowledged to be generally incompatible with low and medium-density residential development.

The city council's expert testified at trial that Nelson's proposal was incompatible with existing and planned single family uses in the area. Mr. Nelson's expert also testified that the low-density zoning would promote the asserted government interests to a greater degree than would high-density zoning.

Nelson's reliance on *Cleburne,* 473 U.S. 432, 105 S.Ct. at 3251, is misplaced. In *Cleburne* the Supreme Court held that a municipal zoning ordinance which required special use permits for group homes for the mentally retarded violated the equal protection clause because the record

showed no rational basis for believing that the group home would pose any special threat to the city's legitimate interests. *Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3258. The court concluded that the ordinance was unsupported by any legitimate interests of the city and was based on an irrational prejudice against the mentally retarded. 473 U.S. at 450, 105 S.Ct. at 3259. In the present case there is evidence that the city was motivated by legitimate concerns. There is no evidence, and no contention by Nelson, that the city council's actions were motivated by irrational prejudice towards Nelson, or a group to which he belonged. *Cleburne*'s rationale therefore does not apply. The ordinance in this case created no special requirements for certain classes of residents and had no focus on the exclusion of particular groups.

■ Nelson also relies upon the Fifth Circuit's decision in *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982), in contending that a refusal to enact a less restrictive zoning ordinance in response to concerns of neighbors opposed to development is unconstitutional. *Wheeler* does not support that contention, however. In *Wheeler* the city passed a restrictive ordinance by popular referendum because of opposition to a particular apartment development, after the developer had already obtained valid building permits and zoning for the development. 664 F.2d at 100. The problem in *Wheeler* was that the referendum forbade construction of a particular development that the city had already authorized. *Id.* The referendum was therefore held to have been confiscatory and lacking in substantial relationship to legitimate concerns. *Id.* In this case the city council, through well established procedures, refused to grant the plaintiff requested zoning, and in so doing responded to neighborhood concerns. *Wheeler* does not stand for the proposition that a city council may not consider the opposition of residents as a factor in its zoning decisions. The opinion of area residents concerning neighborhood preservation is an appropriate factor for considera-

tion in zoning decisions. Other courts have so held. *See, e.g., City of Des Peres,* 534 F.2d at 110; *Mettee v. County Comm'rs,* 212 Md. 357, 364–65, 129 A.2d 136, 140 (1957). The district court agreed and so do we.

AFFIRMED.