**Leonard TYSON and Maryann Tyson, Plaintiffs,**

v.

**CITY OF SUNNYVALE, William F. Powers, Trudi Ryan, Gerri Langtry, Defendants.**

No. C–94–20466–EAI.

United States District Court, N.D. California, San Jose Division.

March 18, 1996.

**1056**

Harry Delizonna, Law Office of Harry Delizonna, San Jose, CA, for Plaintiffs.

Valerie J. Armento, City Attorney, Jeffrey Hare, Asst. City Attorney, Sunnyvale, CA, for Defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.

### I. INTRODUCTION

This is a federal civil rights case brought pursuant to 42 U.S.C. Section 1983 arising from the routine denial of a zoning change by the defendant City of Sunnyvale. Plaintiffs Leonard and Maryann Tyson allege violations of their rights to due process and equal protection secured by the Fourteenth Amendment to the United States Constitution, claiming that defendants arbitrarily denied plaintiffs' application to rezone certain real property. Defendants move for summary judgment, asserting that (1) plaintiffs' cause of action is barred by the doctrines of res judicata and collateral estoppel because plaintiffs failed to exhaust their judicial remedies in state court; (2) plaintiffs cannot establish that they had a property right protected by the due process clause; (3) the individual defendants are entitled to qualified immunity; and (4) plaintiffs' claim for damages is unsupported by the evidence.[1]

### II. BACKGROUND

In 1993, plaintiffs purchased a parcel of real property at a foreclosure sale with the intention of developing the property into single family homes. The total cost to plaintiffs was approximately $395,000, consisting of plaintiffs' bid of $150,000 and existing encumbrances on the property. The property, which measures approximately 38,768 square feet, is located at 1043 Cascade Drive, Sunnyvale, and is surrounded on three sides by single-family homes with lot sizes ranging from approximately 7,600 to 12,700 square feet. The property is L-shaped with a limited frontage of approximately 117 linear feet along Cascade Drive, and is wider and deeper towards the back. Plaintiffs knew at the time of purchase that the property was in a residential neighborhood zoned "R–1," which required a minimum lot size of 8,000 square feet per dwelling unit, and a minimum front yard lot width (or "frontage") of 76 feet per lot. The minimum frontage requirement prevented the development of more than one home along 1043 Cascade Drive, even though plaintiffs' 38,768 square foot lot could theoretically be divided into four 8,000 square foot lots under the R–1 zoning designation. However, prior to purchasing the property, Leonard Tyson had conversations with a member of the City of Sunnyvale planning staff, David Gates, which led him to believe that the property could be rezoned to allow for higher density home development. Ac-

---

1. The parties have consented that all proceedings in the above entitled case may be heard and finally adjudicated by the assigned magistrate judge pursuant to Rule 73, Fed.R.Civ.P. and 28 U.S.C. Section 636(c).

cording to Mr. Gates, rezoning the property from R–1 to R–0 would be a "slam dunk." [2]

In April of 1993, plaintiffs submitted three separate applications to the City of Sunnyvale Department of Community Development, Planning Division. Most importantly, plaintiffs applied for a zoning change from R–1 to "R–0/PD," to allow construction of up to six homes with frontage along a private access road and cul-de-sac instead of along a public road. The "R–1" to "R–0" zoning change would have reduced the minimum lot size requirement from 8,000 to 6,000 square feet per lot; the "PD" or planned development designation would have allowed for the construction of a private access street and a deviation from the minimum frontage restriction. The remaining two applications were for a special development permit ("SDP") and a tentative map [3] for the development of single family homes under the proposed R–0/PD zoning.

In accordance with the City of Sunnyvale's Charter [4] and Municipal Code, the Department of Community Development, Planning Division staff is responsible for reviewing the three applications, and preparing a report with recommendations to the Planning Commission. The Planning Commission reviews the staff's report and recommendations, conducts public hearings, and votes on the applications. Although the Planning Commission has the authority to approve SDPs, it is the City's standard policy to refer any matter involving re-zoning automatically to the City Council for additional public hearings and a final vote.

Over the course of the following year, plaintiffs' property was the subject of seven separate Planning Commission or City Council meetings, as well as four public hearings. At all relevant times, defendants William F. Powers, Trudi Ryan, and Gerri Langtry were employed by the City of Sunnyvale: Powers was Director of Community Development; Ryan was Planning Officer, acting supervisor of the Planning Division of the Department of Community Development; and Langtry was an Associate Planner within the Planning Division who reported directly to Ryan.

Trudi Ryan assigned Gerri Langtry the responsibility for reviewing plaintiffs' applications and for preparing a Planning Division staff report ("staff report") for distribution to the Planning Commission, members of the public, and plaintiffs. In the report, Ms. Langtry recommended on behalf of the staff that the Planning Commission deny plaintiffs' request to rezone the property from R–1 to R–0, and in the alternative, modify the zoning designation from R–1 to R–1/PD to allow the construction of four single family units along a private access street and cul-de-sac. Attached to the report were: maps, sketches and diagrams submitted by the plaintiffs; six letters submitted by residents in support of the proposed project and one resident letter in opposition to the project; a petition containing 90 signatures of individuals in opposition to the project; and other related documents.

The Planning Commission convened on June 14, 1993 to discuss the Planning Division's recommendations and to vote on plaintiffs' applications. The Commission also conducted a public hearing, during which seven individuals residing in the Cascade Drive neighborhood stated their opposition to the proposed project. Nevertheless, the Commission decided to postpone taking any action until June 28, 1993 at the request of Leonard Tyson. In the interim, the plaintiffs submitted modifications to the proposed SDP application, including changes to the lot sizes and architectural modifications to three of the six house plans.

The Planning Division distributed an updated staff report, which recommended for the second time that the Commission deny plaintiffs' applications, and in the alternative approve rezoning to R–1/PD. On June 28,

**2.** Deposition Transcript of David Gates, pp. 14:20, 16:14–16.

**3.** "A tentative map is a precise drawing detailing the design of a project and the conditions on and around the proposed development site that must be met before a final map can be approved and

actual development begun." *Del Monte Dunes v. City of Monterey,* 920 F.2d 1496 (9th Cir.1990).

**4.** Defendants' request for judicial notice of the Charter for the City of Sunnyvale, Section 1010 is hereby granted.

1993, the Planning Commission reconvened. After what appears to be a preliminary vote by the Commission against granting plaintiffs' applications, plaintiff Leonard Tyson interjected a request for a continuance to July 26, 1993, which was granted. The Commission went forward with the public hearing portion of the meeting, during which Mr. Tyson addressed the Commission and presented slides and other exhibits in support of his applications. The Commission also considered the comments of five residents in the Cascade Drive neighborhood who were against the development of six homes, and one resident who was in favor of plaintiffs' proposed development plan.

At the Planning Commission meeting held on July 26, 1993, plaintiffs requested another continuance to August 9, 1993. Before the next meeting, Leonard Tyson submitted a modified proposal for developing five homes instead of six, a document he characterizes as a "positive consensus" illustrating neighborhood support for the proposed development, and a speech.

The Planning Division staff prepared an updated staff report, which inexplicably did not include Mr. Tyson's "positive consensus" or speech. However, Mr. Tyson personally distributed the "positive consensus" and read his speech verbatim at the Planning Commission meeting held on August 9, 1993. The Planning Division staff recommended that the Commission deny plaintiffs' proposed development of five homes, and instead approve development of four homes. Seven of the eight neighbors attending the meeting also voiced their opposition to the proposed development. The Planning Commission voted 5–2 in favor of denying plaintiffs' proposal and in favor of the staff's recommendations, whereupon the matter was automatically referred to the Sunnyvale City Council, which

retains sole discretion to authorize zoning changes.

At the first City Council meeting held on August 31, 1993, a group of neighbors from the Cascade Drive area requested and received a continuance of the matter. On September 14, 1993, the City Council met again. During the public hearing portion of the meeting, Leonard Tyson distributed various materials and addressed the Council at length regarding the history of the project, his proposal, and the concerns of the staff and neighbors. Nine neighbors also addressed the Council, six who stated their opposition, and three who stated their support, for the plaintiffs' proposed development. The City Council voted unanimously in accordance with the recommendations of the Planning Commission to deny plaintiffs' applications, and in the alternative to approve rezoning from R–1 to R–1/PD.

At the next scheduled meeting held on September 21, 1993, the City Council denied plaintiffs' request for reconsideration of his applications, and for the second time, voted unanimously to support rezoning from R–1 to R–1/PD. Thereafter, plaintiffs did not submit any petitions or additional applications to have the property rezoned.[5] Instead, consistent with the new R–1/PD zoning designation, plaintiffs submitted new applications for an SDP to construct four homes and for a tentative map to subdivide the property into four lots and a private street, which were both unanimously approved by the Planning Commission by May of 1994. Shortly thereafter, plaintiffs executed a purchase and sale agreement for their property.

Plaintiffs did not seek review of the City Council's decision by way of administrative mandamus pursuant to California Code of Civil Procedure Section 1094.5,[6] or ordinary

---

5. Sunnyvale Municipal Code Section 19.12.070 provides in relevant part that "[w]henever an application for the amendment of a precise zoning plan has been denied by the city council, no application for the same or a similar amendment of a precise zoning plan relating to the same property shall be filed within one year from the date of the denial of the original application, except that the planning commission or the city council may, in their discretion, permit the filing of a new application within the one year period."

6. Section 1094.5 provides in pertinent part, "[w]here the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury.... [¶](b) The inquiry in such a case shall extend to the questions whether

mandamus pursuant to California Code of Civil Procedure Section 1085. Instead, plaintiffs filed the instant action on July 6, 1994, claiming that defendants violated their constitutional rights to due process and equal protection, and deprived them of the fair market value of their property.[7] On July 27, 1994, plaintiffs signed and accepted the terms and conditions of the SDP granted by the City of Sunnyvale. In November of 1994, plaintiffs closed escrow on the sale of the still undeveloped property for $630,000. The property has since been developed with the construction of four single-family homes and a private street.

### III. STANDARD

Summary judgment shall be entered against the non-moving party if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Once a proper motion is made, entry of summary judgment is mandated where the responding party fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The test to determine whether a motion for summary judgment should be granted mirrors the standard for a directed verdict: "the trial judge must direct the verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial' under Rule 56(c)." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In determining whether there are genuine issues of material fact for trial, the evidence is viewed in the light most favorable to the nonmoving parties, and all justifiable inferences are to be drawn in their favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104 (9th Cir.1991). The substantive law determines which facts are material. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Genuine issues are not raised by mere conclusory allegations. *Blodgett v. County of Santa Cruz*, 553 F.Supp. 1090, 1094 (N.D.Cal.1981), *aff'd* 698 F.2d 368 (1982). "Nor are they raised by allegations in the complaint which are not supported by the record submitted, and which are controverted by affidavits in support of the motion for summary judgment." *Blodgett*, 553 F.Supp. at 1094; Fed.R.Civ.P. 56(e). Furthermore, a "mere existence of a scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Where there are no genuine issues of material fact, and the only dispute is as to pure legal questions, summary judgment is the proper procedural device for adjudicating the lawsuit. *Smith v. Califano*, 597 F.2d 152, 155 (9th Cir.1979), *cert. denied by Smith v. Harris*, 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979).

### IV. DISCUSSION

To prevail on a section 1983 claim, plaintiffs must show that their alleged injuries

---

the respondent has proceeded without or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence...."

7. Plaintiffs' complaint also contains allegations of defamatory statements. To the extent plain-

tiffs are attempting to assert a claim for defamation in the guise of a section 1983 claim, the claim for defamation is dismissed. *Paul v. Davis*, 424 U.S. 693, 711–712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *see also Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1353 (9th Cir.1981) (allegations of harassment, embarrassment, and defamation fail to state a claim cognizable under 42 U.S.C. Section 1983).

amounted to a constitutional deprivation, and that the defendants' actions caused the constitutional violation. *Halverson v. Skagit County,* 42 F.3d 1257, 1260 (9th Cir.1994).[8] In the present case, plaintiffs allege violations of their rights to due process and equal protection arising out of the deprivation of a property interest "in that only four houses were approved for the property as opposed to five or six houses, which deprived plaintiffs of the fair market [value] of his property." [9] Thus, the alleged constitutional violations are predicated on the denial of plaintiffs' re-zoning application.[10] Plaintiffs assert that they were not afforded procedural due process because they were deprived of their right to a fair hearing before unbiased City planners; that they were denied substantive due process when defendants arbitrarily and capriciously denied their re-zoning application; and further, that they were denied equal protection because defendants accorded more favorable zoning treatment to a property allegedly similar to plaintiffs' property.

### A. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects against deprivation "of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, sec. 1.[11] To state a procedural due process claim, plaintiffs must establish that they had a protected property interest, and if so, that they were denied this property right without the process which was due under the circumstances. *Arroyo Vista Partners v.*

*County of Santa Barbara,* 732 F.Supp. 1046, 1053 (C.D.Cal.1990). "At the core of the due process clause is the right to notice and a hearing 'at a meaningful time and in a meaningful manner.'" *Sinaloa Lake Owners Association v. City of Simi Valley,* 882 F.2d 1398, 1405 (9th Cir.1989), *cert. denied by Doody v. Sinaloa Lake Owners Ass'n, Inc.,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). Further, "a fair trial in a fair tribunal is a basic requirement of due process," which applies not only to courts, but also to state administrative agencies. *Stivers v. Pierce,* 71 F.3d 732, 741 (9th Cir.1995).

### 1. Plaintiffs Had No Protected Right To R-0 Zoning

The property interests protected by the due process clause are defined by state law. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871–72, 81 L.Ed.2d 815 (1984) (property interests are not created by the constitution; rather, they are created and their dimensions are defined by existing independent sources such as state law); *Boone v. Redevelopment Agency of City of San Jose,* 841 F.2d 886, 893 (9th Cir.1988), *cert. denied* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988); *Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency,* 561 F.2d 1327, 1330 (9th Cir.1977). Under California law, there is no right to any particular or anticipated zoning. *Lakeview Dev. Corp. v. City of South Lake Tahoe,* 915 F.2d 1290, 1295–96 (9th Cir.1990), *cert. denied,* 501 U.S. 1251, 111 S.Ct. 2890, 115 L.Ed.2d 1055 (1991), *citing Avco Community*

---

8. Section 1983 provides in relevant part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

   42 U.S.C. Section 1983.

9. Complaint, ¶ 20.

10. Plaintiffs' remaining two applications for an SDP and a tentative map for the development of single family homes were based upon the pre-

sumption that the zoning application would be approved. Thus, the critical application related to the zoning change.

11. The pertinent text of the Fourteenth Amendment provides:

   Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

   U.S. Const. amend. XIV, § 1.

*Developers, Inc. v. South Coast Regional Comm'n,* 17 Cal.3d 785, 796, 132 Cal.Rptr. 386, 553 P.2d 546 (1976), *appealed dismissed, cert. denied* 429 U.S. 1083, 97 S.Ct. 1089, 51 L.Ed.2d 529 (1977) ("It is beyond question that a landowner has no vested right in existing or anticipated zoning."); *Arlington Group v. City of Riverside,* 2 F.3d 1156 (9th Cir.1993) (unpublished disposition); *Cf. Toso v. City of Santa Barbara,* 101 Cal.App.3d 934, 162 Cal.Rptr. 210 (1980), *cert. denied* 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 (1980) (property owner acquires no vested right as against future zoning). Nor is there a right to discretionary permits. *Avco, supra.*

■ However, plaintiffs emphasize that a Planning Division staff member, David Gates, told them that re-zoning the property to R0/PD was a "slam dunk," implying that "but for" the alleged due process violation, it was virtually certain that their re-zoning application would have been approved. In *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54 (2d Cir.1985), the court addressed a similar argument brought by a plaintiff landowner who had been denied a license and certificate of approval for the operation of an automobile junkyard. In evaluating the procedural due process claim, the court focused on whether plaintiff had "a legitimate claim of entitlement" to the license and certificate. *Id.* at 58; *see also Parks v. Watson,* 716 F.2d 646, 656 (9th Cir.1983) ("A property interest in a benefit protected by the due process clause results from 'a legitimate claim of entitlement' created and defined by an independent source, such as state or federal law."). The court articulated the test for this inquiry to be whether there was either a "certainty or a very strong likelihood" that the applications would have been granted in the absence of the alleged due process violation. *Id.* at 59. Applying this test to the present case, it is

clear that Mr. Gates' comments did not create a "legitimate claim of entitlement." Mr. Gates was a planner for the City of Sunnyvale Planning Division, and was not an agent of the Planning Commission nor the City Council. Plaintiffs have failed to present any evidence that Mr. Gates had actual or apparent authority to assure or promise plaintiffs that their rezoning application would be approved. Moreover, the undisputed facts establish that approving a re-zoning is purely a discretionary act, which can only be authorized by the City Council.[12] As a matter of law, plaintiffs did not have a vested right to a particular zoning designation, and accordingly, their procedural due process claim necessarily fails. *See e.g. Boone v. Redevelopment Agency of City of San Jose,* 841 F.2d at 893.

### 2. Plaintiffs Were Provided Due Process

■ Even if plaintiffs had a vested property interest, which they did not, they have nevertheless failed to establish that they were deprived of a fair proceeding before unbiased decision-makers. "In attempting to make out a claim of unconstitutional bias, a plaintiff must 'overcome a presumption of honesty and integrity' on the part of decision-makers." *Stivers v. Pierce,* 71 F.3d 732, 741 (9th Cir.1995). Plaintiffs must show that "the adjudicator 'has prejudged, or reasonably appears to have prejudged, an issue.'" *Id.*

Plaintiffs specifically fault defendant Gerry Langtry for omitting the "positive consensus" and speech from the staff report.[13] Plaintiffs also assert that defendant William Powers "called plaintiff Leonard Tyson a 'sly operator' in front of Lisa Grote, Bill Powers, and Brice McQueen, all members of various Sunnyvale City Councils."[14] In addition, plaintiffs assert that defendant Trudi Ryan " 'laughed historically' [sic] at plaintiffs on

---

**12.** Sunnyvale Municipal Code Section 19.12.090 provides in pertinent part that the City Council, after receiving a report or recommendation from the Planning Commission on a proposed plan or amendment may: adopt by ordinance any precise plan or amendment thereof, as proposed or as changed or modified by the City Council, when deemed to be in the public interest by the City Council; or disapprove and reject the proposed precise plan or amendment thereof when

such disapproval and rejection is deemed to be in the public interest by the City Council.

**13.** *See supra,* p. 5:2–10, 15–17.

**14.** Plaintiffs' Response And Submission of Undisputed Facts in Support of Opposition to Defendants' Motion for Summary Judgment, p. 6:16–20.

the telephone and told them 'guess what ... you can't go in for another year to re-submit your plans' upon the Commission's refusal to re-zone plaintiff's real property." [15]

None of this conduct rises to the level of a constitutional violation for various reasons. The failure to include the "positive consensus" and speech in the staff report was rectified by Leonard Tyson when he distributed the "positive consensus" and read his speech verbatim at the Planning Commission meeting held on August 9, 1993. Further, plaintiffs' assertion that William Powers called Leonard Tyson a "sly operator" is absolutely unsupported by competent evidence, and is irrelevant to the *City Council's* decision to deny plaintiffs' re-zoning application.[16] The telephone conversation between Trudi Ryan and Mr. Tyson is also irrelevant to the *City Council's* decision to deny plaintiffs' re-zoning application; indeed, the conversation took place after the City Council had finally denied the re-zoning application. Even if the comments of Ryan and Powers could be interpreted as some evidence of bias, neither defendant had authority to approve or reject plaintiffs' re-zoning application.

Moreover, the undisputed evidence establishes that Leonard Tyson attended the seven public meetings and four public hearings at which his property was discussed, and was given an opportunity to address the Planning Commission as well as the City Council. There is no competent evidence indicating that the individual defendants negatively influenced the City Council's decision. Nor is there any evidence suggesting any irregularities during these proceedings; rather, the minutes of these meetings confirm that discussions regarding plaintiffs' property were conducted in an orderly and professional manner. In short, plaintiffs received at least the minimum due process required by the Constitution, and have failed to overcome the presumption that the City Council members acted with honesty and integrity. Accordingly, defendants are entitled to summary

judgment to the extent the section 1983 claim is predicated on a purported violation of plaintiffs' right to procedural due process. *See Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 830 (1st Cir.1982), *cert. denied* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

### B. Substantive Due Process

▇▇▇ The due process clause also includes a substantive component "which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Sinaloa Lake Owners Assn. v. City of Simi Valley,* 882 F.2d at 1407. "In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions." *Arroyo Vista Partners v. County of Santa Barbara,* 732 F.Supp. at 1053. To establish a violation of substantive due process, plaintiffs must prove that the defendants' actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa,* 882 F.2d at 1407; *see also Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1234 (9th Cir.1994), *cert. denied* ── U.S. ──, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). Thus, any government action which "has no substantial relation to the public health, safety, morals, or general welfare" is arbitrary and unreasonable, and the converse is also true. *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir. 1994).

▇▇▇ "The protection from governmental action provided by substantive due process has most often been reserved for the vindication of *fundamental rights,*" such as marriage, family, procreation, and the right to bodily integrity. *Halverson v. Skagit County,* 42 F.3d 1257, 1261 (9th Cir.1994) (emphasis added), *citing Albright v. Oliver,*

---

15. Plaintiffs' Response And Submission of Undisputed Facts in Support of Opposition to Defendants' Motion for Summary Judgment, p. 7:14–18. Ms. Ryan denies laughing "hysterically," but does not expressly deny that the conversation took place. Declaration of Trudi Ryan, p. 7:7–9.

16. Plaintiffs have failed to submit those portions of Mr. Tyson's deposition transcript that they contend support their assertion. Furthermore, Mr. Powers denies ever making such a statement. Declaration of William F. Powers, p. 6:15–16.

510 U.S. 266, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994). "The Supreme Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). Accordingly, where, as here, plaintiffs rely on substantive due process to challenge governmental action that does not impinge on a fundamental right, federal courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Halverson v. Skagit County*, 42 F.3d at 1262, citing *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir. 1994); *see also Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.), cert. denied —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). In order to survive the motion for summary judgment, plaintiffs must demonstrate the *irrational* nature of the defendants' actions by showing that they "could have had no legitimate reason" for their decisions. *See Halverson v. Skagit County*, 42 F.3d at 1262, citing *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.), cert. denied —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). If it is "at least fairly debatable" that the decision is rationally related to a legitimate government interest, there can be no violation of substantive due process. *Nelson v. City of Selma*, 881 F.2d 836, 838 (9th Cir.1989).

■■■■ Rejection of development projects, including refusals to issue discretionary permits, do not ordinarily implicate substantive due process. *Stubblefield Const. Co. v. City of San Bernardino*, 32 Cal.App.4th 687, 38 Cal.Rptr.2d 413 (1995), *cert. denied* —— U.S. ——, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995). In *Stubblefield*, plaintiffs alleged violations of their substantive due process and equal protection rights, claiming that the City of San Bernardino had irrationally and arbitrarily manipulated the City processes and procedures for no legitimate reason, thereby preventing plaintiffs from constructing apartment buildings. The court held

that plaintiffs had no vested right to build any particular apartment buildings, and that even if they did have such a right, they failed to establish a substantive due process violation. The court reasoned that the doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law." *Id.* at 709, 38 Cal. Rptr.2d 413. "Rather, substantive due process prevents "governmental power from being used for purposes of oppression," or "abuse of government power that shocks the conscience," or "action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *Id.* quoting *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28 (1st Cir.1991), cert. dismissed, 503 U.S. 257, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992). The court found that the City of San Bernardino had responded to political concerns, and concerns of constituents in the affected area, and that plaintiff had failed to establish that a particular councilman's strenuous opposition to the proposed development was arbitrary or irrational. The court characterized the lawsuit as an ordinary dispute between a developer and a municipality, and essentially declined to "sit as a super zoning board or a zoning board of appeals." *Id.* at 710–712, 38 Cal.Rptr.2d 413.

Similarly, in *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.1982), plaintiffs alleged due process violations, asserting that the local planning board's rejection of plaintiffs' proposed residential housing development plan deprived them of their "right" to conduct a legitimate business and make a profit. The court rejected the plaintiffs' argument that their constitutional rights had been violated by the arbitrary application or "distortion" of the law to their property. The court also rejected plaintiffs' implication that the alleged constitutional violation was caused by town officials who were motivated by "parochial views of local interests which worked against plaintiffs' plan," stating:

Plaintiffs would thus have us rule that the due process clause to the United States Constitution was violated when Bolton's Planning Board, for the purpose of pro-

tecting what it viewed as the town's basic character, openly interpreted state subdivision laws and a state court decision in ways which frustrated plaintiffs' large scale housing development of a particular design.

Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [plaintiffs'] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation.... The authority cited by [plaintiff], as well as other cases, all suggest that the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution.... A federal court, after all, "should not ... sit as a zoning board of appeals." *Village of Belle Terre v. Boraas,* 416 U.S. 1, 12, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797 (1974)....

\*　　\*　　\*　　\*　　\*　　\*

... In short, we see nothing in the present case to distinguish it sufficiently from the usual land developer's claim under state law to warrant recognition of a federal constitutional question.

*Id.* at 832–833.

▆ Here, plaintiffs' claim is similarly too typical of the run of the mill dispute between a developer and a planning agency to rise to the level of a substantive due process violation. There is ample evidence in the record that the rejection of plaintiffs' re-zoning application was rationally related to legitimate government interests. The City Council, which alone had final authority to approve or reject the re-zoning application, had the cumulative evidence of four public hearings, letters and testimony from at least 20 individual neighbors, staff reports, and related documentation. From the outset, the Planning Commission considered the preservation of the character and integrity of the neighborhood, prevention of undue concentration of population, prevention of traffic congestion, and safety, all of which are legitimate

purposes of planning and zoning. *See e.g. Nelson v. City of Selma,* 881 F.2d 836, 839 (9th Cir.1989). The Planning Commission also appropriately considered the opinion of area residents concerning neighborhood preservation, and the compatibility of plaintiffs' proposed development with the surrounding homes. *Nelson,* 881 F.2d at 839–840. The Planning Commission consistently recommended that the City Council deny the application. Later, the City Council considered the very same factors that the Planning Commission did, and also consistently voted to deny the application. Plaintiffs have failed to present any evidence to suggest that the City Council was motivated by anything other than these legitimate concerns.

▆ However, as discussed *supra* at Section IV.A.2, plaintiffs suggest that certain members of the Planning Commission and staff had ulterior, irrational and arbitrary motives. As a general rule, the motives of planning commission members or city council members are considered irrelevant to any inquiry concerning the reasonableness of their decisions. *See Arroyo Vista Partners v. County of Santa Barbara,* 732 F.Supp. 1046, 1054 (C.D.Cal.1990); *Toso v. City of Santa Barbara,* 101 Cal.App.3d 934, 946, 162 Cal.Rptr. 210 (1980); *Ensign Bickford Realty v. City Council, Etc.,* 68 Cal.App.3d 467, 478, 137 Cal.Rptr. 304 (1977). "If there is any rational basis for a zoning decision from the objective facts, the actual motive for the decision becomes immaterial." *Ensign Bickford,* 68 Cal.App.3d at 478, 137 Cal.Rptr. 304. As discussed directly above, the objective facts in the present case indicate that the City Council had several rational bases for denying the re-zoning application, and instead adopting a new R–1/PD designation for plaintiffs' property. The R–1/PD zoning designation was consistent with the surrounding neighborhood, which was zoned R–1 on three sides. Accordingly, to the extent the section 1983 claim is predicated on a purported violation of plaintiffs' right to substantive due process, defendants are entitled to summary judgment. *See Halverson v. Skagit,* 42 F.3d 1257 (9th Cir.1994).

## C. Equal Protection

 Plaintiffs assert that their right to equal protection under the law was violated, claiming that a parcel of property referred to as the "Vanderbilt project" was similar to plaintiffs' property, and was approved for rezoning from R–1 to R–0/PD for a development plan similar to plaintiffs' proposed plan. To establish an equal protection claim, plaintiffs must show that the city or its officials applied the law in an arbitrary or invidiously discriminatory manner, not rationally related to a legitimate interest. *Del Monte Dunes v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.1990). Municipal development decisions are "presumptively constitutional and, therefore, need only be rationally related to a legitimate state interest, unless the distinctive treatment of the property involves either a fundamental right or a suspect classification." *Del Monte Dunes v. City of Monterey*, 920 F.2d at 1508. Because there is no fundamental right to a particular zoning [17], and plaintiffs have not identified a suspect classification, the test for determining whether plaintiffs were denied equal protection of the laws is the same as the standard for determining whether they were denied due process: the City Council's decisions should be upheld if they bear a rational relationship to a legitimate state interest. *See Nelson v. City of Selma*, 881 F.2d 836, 838–839 (9th Cir.1989), citing *Burlington Northern Railroad Co. v. Department of Public Service*, 763 F.2d 1106, 1109 (9th Cir.1985).

As discussed previously, the denial of plaintiffs' re-zoning application was rationally related to legitimate government interests. Furthermore, the undisputed facts establish that the Vanderbilt project was not comparable to plaintiffs' property in any material aspect: it is located several blocks to the north east of plaintiffs' property; it is bordered on the south by properties which are zoned R–2 and R–2/PD, and to the west by a townhouse development which is zoned R–

3/PD, and a school site (zoned PF–Public Facilities).[18] Plaintiffs' property is surrounded on three sides by property zoned R–1. Moreover, the Vanderbilt project was rezoned from R–1 to R–2/PD, not R–0/PD.[19] In summary, plaintiffs have failed to present evidence upon which a reasonable jury could find that the City Council's comparative treatment of the Vanderbilt property and plaintiffs' property violated plaintiffs' right to equal protection under the law.

## V. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment as to plaintiffs' Section 1983 claim for violations of procedural and substantive due process, and equal protection is **GRANTED**.[20]

**IT IS SO ORDERED.**

---

17. *See supra* Section IV.A.1.

18. *See* Ex. A to Supplemental Declaration of Trudi Ryan.

19. *Id.*

20. It is unnecessary to address defendants' alternative arguments regarding res judicata, collateral estoppel, qualified immunity, and damages.